KANNE, Circuit Judge.
Before us is a petition for a writ of habeas corpus, filed by Floyd Richardson, a convicted murderer. It is the second time his case has come before this court. The district court granted Richardson’s petition on Batson grounds, a decision which the State of Illinois appeals. Richardson, in turn, appeals the district court’s denial of his evidentiary/due process and ineffective assistance of counsel claims. We reverse in part and affirm in part. First, we reverse the district court’s grant of habeas relief on Batson grounds. Richardson procedurally defaulted a challenge to the prosecution’s use of peremptories by failing to contemporaneously object, and he has not shown cause to excuse that default. Our review is foreclosed. Next, we affirm the district court’s treatment of the remaining two claims. Richardson’s petition is denied.
*262 I. BACKGROUND
In 1984, Floyd Richardson was convicted of armed robbery and murder. During his jury trial, the State of Illinois presented ballistics evidence and identification testimony tying Richardson to a pair of shootings that took place at South Side businesses in April 1980. A Chicago Police Department firearms examiner testified that rounds fired at both scenes came from the same gun, and eyewitnesses from both scenes identified Richardson as the gunman. That was enough to persuade the jury to convict, and the trial court sentenced Richardson to death.[1] We discussed Richardson’s trial and sentencing hearing in detail in our previous opinion in this case, see Richardson v. Briley, 401 F.3d 794, 795-98 (7th Cir.2005), and here we address only those facts that are pertinent to the claims presently at issue.
We begin by surveying the factual and procedural history of Richardson’s Batson claim, which was the basis for the district court’s grant of a writ of habeas corpus and which is the subject of the State’s appeal. We then provide the background to Richardson’s “other crimes evidence” and ineffective-assistance-at-sentencing claims, which were denied by the district court and which are the subject of Richardson’s cross-appeal.

A. Jury Selection and Related Assistance-of-Counsel Issues

The first issue — and the subject of the State’s appeal — is Richardson’s challenge to the State’s use of peremptory strikes. Richardson’s jury was selected in panels of four. The trial judge conducted voir dire and did not allow the parties to question the members of the venire. In all, sixty-one persons were questioned during jury selection. The trial judge excused twenty-four for cause. Richardson used twenty peremptory challenges, and the State used sixteen. Richardson did not object to the State’s use of peremptories at trial.

1. State Appellate and Postconviction Proceedings

After sentencing, Richardson appealed to the Illinois Supreme Court. While his appeal was pending, the Supreme Court decided Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Nonetheless, Richardson again failed to make an issue of the State’s use of per-emptories. The Illinois Supreme Court affirmed his conviction and sentence without addressing any jury selection issues. People v. Richardson, 123 Ill.2d 322, 123 Ill.Dec. 908, 528 N.E.2d 612 (1988). His petitions for rehearing and for a writ of certiorari were denied.
In 1991, Richardson filed a petition for postconviction relief in state court. It was at this point, seven years after his trial concluded, that his Batson claim first appeared. He also attacked both trial and appellate counsel as constitutionally ineffective for their failure to raise the issue sooner. The State moved to dismiss the petition. The trial court found that the Batson claim was waived under existing Illinois law as a result of Richardson’s failure to object to the State’s use of per-emptories at trial. Nonetheless, the court went on to consider the claim on the merits, in part because of its connection to the ineffective assistance issues.
In considering Richardson’s Batson claim, the trial court reviewed the pleadings, the associated exhibits, and the record available to it, but did not hold an *263 evidentiary hearing or allow for any expansion of the record. This procedure was based on the Illinois Postconviction Hearing Act, which permitted “summary dismissal” of a “nonmeritorious petition” based on a review of the petitioner’s submissions and existing record materials. People v. Mahaffey, 165 Ill.2d 445, 209 Ill.Dec. 246, 651 N.E.2d 174, 179 (1995).
On the record before it, the trial court found that thirteen of the sixteen jurors peremptorily excluded by the prosecution were black, but that the race of the other three stricken jurors was unclear. It further found that the record did not show what percentage of the venire members not challenged for cause were black, but that, of the fourteen jurors and alternates actually seated, eight were white and three were black, with the race of the other three unknown. The trial court also considered that fifteen of the sixteen stricken jurors shared a non-suspect common characteristic in that none had ever been the victim of a crime. It concluded — relying in significant part on the inadequacy of the existing record — that Richardson had not made out a prima facie case that the strikes were used in a discriminatory manner. It also found that neither trial counsel nor appellate counsel was constitutionally ineffective. Richardson’s petition was dismissed.
Richardson appealed. The Illinois Supreme Court found that his Batson claim was waived, and declined to review it on the merits. People v. Richardson, 189 Ill.2d 401, 245 Ill.Dec. 109, 727 N.E.2d 362, 368-69 (2000). In doing so, first, the court correctly observed that Batson was at least theoretically available to Richardson, because it was decided while his case was pending on direct review. Id. at 368 (citing Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). But the court then relied on a series of Illinois eases managing the retroactive preservation of Batson claims to find waiver:
However, Batson requires “a defendant’s timely objection to a prosecutor’s challenges.” (Emphasis added.) Batson, 476 U.S. at 99 [106 S.Ct. 1712], A defendant who fails to raise a Batson objection before the jury is sworn waives the issue. People v. Fair [159 Ill.2d 51, 201 Ill.Dec. 23], 636 N.E.2d 455 (Ill.1994). This rule applied under the old rule of Swain (e.g., People v. Gaines [88 Ill.2d 342, 58 Ill.Dec. 795], 430 N.E.2d 1046 (Ill.1981)) and applies to cases pending on appeal when Batson was decided (e.g., People v. Evans [125 Ill.2d 50, 125 Ill.Dec. 790], 530 N.E.2d 1360 (Ill.1988); accord People v. Holder [153 Ill.App.3d 884, 106 Ill.Dec. 700], 506 N.E.2d 407 (Ill.1987)). Thus, a defendant who failed to object to the prosecution’s use of peremptory challenges under the old rule of Swain cannot receive on appeal the benefit of the new rule announced in Batson. People v. Pecor [153 Ill.2d 109, 180 Ill.Dec. 50], 606 N.E.2d 1127 (Ill.1992); accord Teague v. Lane, 489 U.S. 288, 297 [109 S.Ct. 1060, 103 L.Ed.2d 334] (1989) (under Illinois law, failure to raise Swain claim at trial and on direct review waives Batson-type claim in state post-conviction proceeding).
In this case, defendant concedes, as our review of the record confirms, that his trial counsel did not object during voir dire to the prosecution’s use of its peremptory challenges or include this issue in the post-trial motion. We note that while defendant’s direct appeal was being briefed, this court remanded several pending cases to trial courts for Batson hearings, where the Batson issue was timely raised at trial. People v. Hooper [118 Ill.2d 244, 107 Ill.Dec. 250], 506 N.E.2d 1305 (Ill.1987) (Ryan, J„ concurring) (describing court as remanding “all *264 cases on review in which the Batson issue is viable” to circuit courts for Batson hearings); see, e.g., Evans [125 Ill.Dec. 790], 530 N.E.2d 1360. Defendant has waived this claim.
Richardson, 245 Ill.Dec. 109, 727 N.E.2d at 368-69 (internal citations reformatted for clarity). The United States Supreme Court again denied certiorari. Richardson v. Illinois, 531 U.S. 871, 121 S.Ct. 170, 148 L.Ed.2d 116 (2000).
The Illinois Supreme Court also considered Richardson’s ineffective assistance claim. Richardson explicitly abandoned his claim that trial counsel was ineffective for failing to raise a Batson objection, see 245 Ill.Dec. 109, 727 N.E.2d at 369, but continued to maintain that appellate counsel was ineffective for the same reason. The court disagreed, finding that appellate counsel could not be considered constitutionally ineffective for failing to argue a waived claim. 245 Ill.Dec. 109, 727 N.E.2d at 369-70.

2. Federal Proceedings

Richardson’s next move, in 2000, was to file in federal court seeking a writ of habe-as corpus on various grounds, including the Batson claim he unsuccessfully asserted in state postconviction proceedings. The district court conducted an evidentiary hearing and granted habeas relief on the grounds that the prosecution deceived Richardson into neglecting to call an exculpatory witness. On appeal, we reversed. Richardson v. Briley, 401 F.3d 794. We found that Richardson was not prejudiced by the prosecutor’s alleged misconduct, and remanded for further proceedings on the unresolved claims. Id. at 803.
The district court turned to the Batson claim on remand. Richardson v. McCann, 653 F.Supp.2d 831 (N.D.Ill.2008). The court held that the claim was procedurally defaulted — the Illinois Supreme Court’s finding of waiver was an independent and adequate state law ground for dismissal. But the court also found that Richardson could likely establish cause for the default and actual prejudice arising therefrom.
With respect to cause, the district judge found that Richardson’s default — his failure to object to the State’s use of peremp-tories during jury selection — occurred because there was no “reasonable basis” for such an objection at the time of trial. In the alternative, if a Batson or “proto-Bai-son ” claim was available, the district court found that both trial and appellate counsel were constitutionally ineffective for failing to raise it.
With respect to prejudice, the district judge explained that his determination would inevitably be tied to the merits, but he noted that the nature of Richardson’s claim meant — if it was true, and if the prosecution really did purposefully exclude black prospective jurors from service — • that he was almost certainly prejudiced. For the foregoing reasons,' and because he found that Richardson had diligently attempted to expand the record during state court postconviction proceedings, the district judge concluded that an evidentiary hearing was warranted.
In a corrected memorandum opinion issued on March 13, 2012, Richardson v. Hardy, 855 F.Supp.2d 809 (N.D.Ill.2012), the district judge granted habeas relief on Batson grounds. The court maintained its prior position with regard to the issues of procedural default and cause therefor: while the Batson claim was procedurally defaulted, the default was excused because there was no reasonable basis for it at the time of trial, or, in the alternative, because trial and appellate counsel were constitutionally ineffective for failing to raise the issue in a timely fashion.
*265 Turning to the related questions of actual prejudice and the merits of the claim,[2] the district judge reviewed the expanded record. In addition to the information available to the state trial court on post-conviction review, the district judge was able to ascertain that all sixteen of the prosecution’s peremptory strikes were used on black jurors, and that the net effect of those strikes was to produce a petit jury that was one-third black and two-thirds white. Those figures stood in contrast to the composition of the total number of prospective jurors tendered to the prosecution, of which fifty-six percent were black and forty-four percent were white. Based on the starting point, the end point, and several observations about the path from the former to the latter, the district judge concluded that Richardson had made out a prima facie case under Batson.
Next, the district court found that the purported nondiscriminatory reasons for the prosecution’s use of peremptory strikes — which were largely conjectural and circumstantial, given that the prosecutors themselves could not recall their motives from over 30 years ago — could not satisfactorily explain all sixteen of the challenged strikes. Although it held Richardson to his burden of persuasion, it found that burden to be discharged and granted the writ. The State of Illinois appeals.

B. Richardson’s Cross-Appeal

In granting the writ on Batson grounds, the district court also considered Richardson’s remaining claims, each of which, it concluded, lacked merit. Richardson appeals the resolution of two of them: (1) his claim that the admission of certain “other crimes evidence” rendered his trial unfair; and (2) his claim that trial counsel was constitutionally ineffective during the sentencing phase. Although the district court denied relief on both grounds, it issued a certificate of appealability with respect to the latter. We expanded the certificate to include the former.

1. Other Crimes Evidence

Richardson was convicted of the April 1, 1980, armed robbery of Twin Foods & Liquors, a convenience store located on the South Side of Chicago. He was also convicted of the contemporaneous murder of George Vrabel, an employee of the store. During the trial, however, evidence of two noncharged criminal incidents was also introduced. First, the prosecution introduced evidence pertaining to an April 5, 1980, robbery and shooting at a tavern about one mile away. The prosecution tied the two 1980 robberies together with ballistics evidence and relied on identification testimony from witnesses at both crime scenes to attain a conviction. Second, the prosecution introduced evidence of an armed robbery that occurred on May 4, 1982. On that occasion, police had arrested Richardson in the vicinity of the crime because he matched a description of the perpetrator.

a. State Court Proceedings

Richardson objected to the introduction of the foregoing evidence at trial. The trial court ruled that the April 5, 1980, evidence was admissible for the purpose of *266 proving the defendant’s identity and that the May 4, 1982, evidence was admissible to explain the circumstances of Richardson’s arrest. On direct appeal, Richardson renewed his objection. The Illinois Supreme Court acknowledged the dangers attendant to the introduction of other crimes evidence, but found that the April 5th evidence was “highly relevant and admissible” for the purpose of identifying Richardson as the April 1st shooter. 123 Ill.Dec. 908, 528 N.E.2d at 617. The Illinois Supreme Court did agree with Richardson that there was no justifiable basis for the admission of the May 4th evidence, but it concluded that the erroneous admission was harmless. Id. 123 Ill.Dec. 908, 528 N.E.2d at 619. Richardson did not continue to pursue his other crimes evidence claims in state postconviction proceedings, and the postconviction opinions of both the trial court and the Illinois Supreme Court contain no reference to it.

b. Federal Court Proceedings

The district court refused to grant habe-as relief based on Richardson’s other crimes claim in its corrected memorandum opinion. Richardson, 855 F.Supp.2d at 814-17. Because the Illinois Supreme Court decided the issue on the merits on direct appeal, the district court asked whether that court’s decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The district court found that it was not. Although the Federal Rules of Evidence do limit the introduction of evidence of uncharged criminal behavior, see Fed.R.Evid. 404(b), there is no federal constitutional or statutory right to a state-court trial free of such evidence, even where that evidence is used to show propensity.[3] Relief, therefore, could only be available under a general procedural due process theory. The district court could not say that the Illinois Supreme Court decision amounted to an unreasonable application of general due process principles, and so denied relief. Richardson appeals.

2. Ineffective Assistance at Sentencing

Richardson was convicted of armed robbery and of the murder of George Vrabel by a jury in 1984, but his sentence was determined by the trial judge. During the sentencing phase, the State of Illinois introduced substantial evidence in aggravation, consisting mostly of'evidence of Richardson’s egregiously criminal past. In mitigation, Richardson’s trial counsel offered the testimony of Richardson, his mother, and his sometime paramour. The testimony of the women was primarily character evidence, consisting of claims that Richardson was a good father and a good son, with his heart in the right place. Richardson himself downplayed his involvement with some of the criminal incidents cited by the prosecution, justified his participation in others, and admitted to the remainder. The trial court sentenced Richardson to death.

a. State Court Proceedings

Richardson first attacked trial counsel’s sentencing-phase performance in his state-court motion for postconviction relief. His claim is that counsel was ineffective for failing to investigate and introduce potentially mitigating evidence, including traumatic aspects of Richardson’s childhood and social history as well as his diminished mental capacity. The Illinois Supreme *267 Court, applying the Strickland standard, concluded that counsel’s performance was not deficient. 245 Ill.Dec. 109, 727 N.E.2d at 369-74 (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In the court’s view, to introduce evidence of Richardson’s diminished mental capacity — the mitigating value of which would be decreased culpability for his actions — would have been incompatible with Richardson’s continued protestations that he was innocent. Id. 245 Ill.Dec. 109, 727 N.E.2d at 372. In the alternative, the court saw no prejudice; the balance of aggravators versus miti-gators was so lopsided that, even if the evidence Richardson sought had been introduced, there was virtually no possibility of a sentence other than death. Id. 245 Ill.Dec. 109, 727 N.E.2d at 372-73. Moreover, the court felt that the trial court would likely have viewed additional evidence of Richardson’s troubled personal and social history as aggravating, rather than mitigating. Id. 245 Ill.Dec. 109, 727 N.E.2d at 374. It denied relief.

b. Federal Court Proceedings

By the time Richardson’s ineffective-assistance-at-sentencing claim was decided by the district court, his sentence had been commuted to life in prison without the possibility of parole. But that did not necessarily render the claim moot; Richardson would still be entitled to relief if adequate representation would have resulted in a sentence to a term of years. Applying the deferential § 2254(d) standards to the Illinois Supreme Court’s analysis, the district court expressed some doubt about that court’s conclusion that trial counsel had made a deliberate choice to forego the presentation of evidence related to Richardson’s diminished mental capacity. In the district court’s view, the evidence suggested that trial counsel had not investigated the issue at all, which requires a slightly different Strickland performance analysis. But the district court ruled that the state court’s application of the prejudice prong of the Strickland test was not unreasonable, and for that reason alone, Richardson’s claim could not be successful. Richardson now appeals the district court’s conclusion.
II. ANALYSIS
We begin with the State’s appeal of the district court’s treatment of the Batson claim. We agree with the district court that Richardson procedurally defaulted the claim, and that his default was indeed an independent and adequate state law ground for the Illinois Supreme Court’s judgment. We part ways with the district court, however, on the issue of cause to excuse the default. Richardson cannot rely on the performance of trial counsel as cause because he failed to independently preserve that claim. He cannot rely on the performance of appellate counsel as cause because appellate counsel was not constitutionally ineffective. Finally, he cannot rely on the rule of Reed v. Ross, 468 U.S. 1, 17, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), because it does not apply to this case. Richardson’s failure to show cause to excuse his default means that our review is foreclosed; we need not consider the question of actual prejudice.
Next, we turn to the two claims which lie at the core of Richardson’s cross-appeal. We affirm the district court’s denial of habeas relief on both grounds. The Illinois Supreme Court confronted each issue on the merits, so we apply the deferential standard of review codified in the Anti-terrorism and Effective Death Penalty Act of 1996 (“AEDPA”), and we find that the state court’s treatment of the issues was not unreasonable. The end result is that Richardson’s petition is denied in full.

*268
A. Batson Claim

We cannot review Richardson’s Batson claim on the merits without first grappling with the fact that the Illinois Supreme Court, as the last state court to address the issue, appeared to resolve it on the state law ground of waiver. “When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed.” Kaczmarek v. Rednour, 627 F.3d 586, 591 (7th Cir.2010) (citing Woods v. Schwartz, 589 F.3d 368, 373 (7th Cir.2009); Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). In the habeas context, the “independent and adequate state ground” doctrine does not serve as a jurisdictional bar. It is based instead on “equitable considerations of federalism and comity,” Lambrix v. Singletary, 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997), and it serves to ensure “that the States’ interest in correcting their own mistakes is respected in all federal habeas cases.” Coleman, 501 U.S. at 732, 111 S.Ct. 2546; see also Dretke v. Haley, 541 U.S. 386, 392-93, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (referring to the rule as “prudential” in origin).
The doctrine applies regardless of whether the state law ground is substantive or procedural. Coleman, 501 U.S. at 729, 111 S.Ct. 2546. But given what a petition for habeas corpus is, the substantive merit of a legal claim contained therein is bound to be governed by federal law. Accordingly, when a state court relies on an independent and adequate state law ground to resolve such a claim, that state law ground is usually procedural. We refer to claims resolved in this way as being procedurally defaulted. Woods, 589 F.3d at 373.
Procedural defaults take several forms, but two are paradigmatic. On the one hand, a claim might be procedurally defaulted when a petitioner fails to “fairly present” his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level. To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings. McDowell v. Lemke, 737 F.3d 476, 482 (7th Cir.2013); see also O’Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). The complete round requirement means that the' petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. Lewis v. Sternes, 390 F.3d 1019, 1025-26 (7th Cir.2004) (citing O’Sullivan, 526 U.S. at 845-46, 119 S.Ct. 1728).[4] On the other hand, a claim might be procedurally defaulted through a petitioner’s initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review. “[W]hen a state court refuses to reach the merits of a petitioner’s federal claims because they were not raised in accord with *269 the state’s procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds.” Kaczmarek, 627 F.3d at 591 (citing Woods, 589 F.3d at 373; Gray v. Hardy, 598 F.3d 324, 329 (7th Cir.2010)).
The last state court to consider Richardson’s Batson claim was the Illinois Supreme Court, on postconviction review. Richardson, 245 Ill.Dec. 109, 727 N.E.2d at 368-69. The court found that Richardson had “waived this claim” by failing to contemporaneously object to the State’s use of peremptories.[5] Id. 245 Ill.Dec. 109, 727 N.E.2d at 369. The waiver finding unquestionably was the basis for the court’s decision, and it certainly looks like a procedural default. See, e.g., Kaczmarek, 627 F.3d at 591 (referring to failure to contemporaneously object as a procedural default); Brooks v. Walls, 279 F.3d 518, 522 (7th Cir.2002) (using the same example).
Richardson admits that the waiver ruling was procedural in nature, but he argues that it was based on a federal rule of procedure, despite the fact that it was issued by a state court. Thus, he argues, while his claim may have been defaulted, that default was not an “independent,” nor an “adequate,” state ground for the decision. The district court disagreed. We review procedural defaults and related issues de novo, Page v. Frank, 343 F.3d 901, 905 (7th Cir.2003), and we discuss the independence and the adequacy of the waiver finding sequentially.

1. Independence of Waiver Finding

Richardson is right to stress that the mere invocation of a state law rule does not necessarily create an “independent” state law ground to support a judgment. The state court must actually have relied on that rule — and not on a parallel or interwoven federal basis — in order to foreclose our review. Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (“The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.”). We do not construe genuine ambiguity in favor of the state; if it “fairly appears” that the state court rested its decision primarily on federal law or is interwoven therewith, a federal court may review the federal question unless the state court’s opinion contains a “plain statement” that its decision rests on state grounds. Harris v. Reed, 489 U.S. 255, 261, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).
Richardson’s position is that the Illinois Supreme Court’s opinion was ambiguous. His argument depends on lifting a single phrase out of context: “Batson requires ‘a defendant’s timely objection to a prosecutor’s challenges.’ ” 245 Ill.Dec. 109, 727 N.E.2d at 368 (quoting Batson, 476 U.S. at 99, 106 S.Ct. 1712) (emphasis original). He believes the state court relied on a federal timely objection requirement intrinsic to Batson itself, and that its state law waiver decision therefore at least appeared to be interwoven with federal law. We disagree. The state court opinion was not ambiguous, and it plainly does not bear Richardson’s interpretation.
First, Richardson seems to think that the mere mention of a federal case creates an ambiguity. But the sort of ambiguity that is necessary to justify abandoning our *270 position of deference to state court judgments is not merely semantic or superficial. Under the Supreme Court’s applicable precedents, we are concerned with the grounds on which the state court decision fairly appears to “rest,” or to “rely.” See, e.g., Coleman, 501 U.S. at 736, 111 S.Ct. 2546; Caldwell, 472 U.S. at 327, 105 S.Ct. 2633; Harris, 489 U.S. at 261, 109 S.Ct. 1038. The context surrounding the sentence cherry-picked by the petitioner makes it abundantly clear that the Illinois Supreme Court relied on an Illinois rule governing the preservation of claims related to jury composition, one which remained unchanged throughout the Swaim-Batson transition:
A defendant who fails to raise a Batson objection before the jury is sworn waives the issue. People v. Fair [159 Ill.2d 51, 201 Ill.Dec. 23], 636 N.E.2d 455 (Ill.1994). This rule applied under the old rule of Swain (e.g., People v. Gaines [88 Ill.2d 342, 58 Ill.Dec. 795], 430 N.E.2d 1046 (Ill.1981)) and applies to cases pending on appeal when Batson was decided (e.g., People v. Evans [125 Ill.2d 50, 125 Ill.Dec. 790], 530 N.E.2d 1360 (Ill.1988); accord People v. Holder [153 Ill.App.3d 884, 106 Ill.Dec. 700], 506 N.E.2d 407 (Ill.1987)). Thus, a defendant who failed to object to the prosecution’s use of peremptory challenges under the old rule of Swain cannot receive on appeal the benefit of the new rule announced in Batson. People v. Pecor [153 Ill.2d 109, 180 Ill.Dec. 50], 606 N.E.2d 1127 (Ill.1992)[.]
245 Ill.Dec. 109, 727 N.E.2d at 368 (citations reformatted for clarity). No reasonable reader could understand the Illinois Supreme Court to be relying on a waiver requirement intrinsic to Batson when its opinion explicitly states that the rule on which it relies predates that decision.
Second, the federal timing requirement on which Richardson claims the state court partially relied simply does not exist. Certainly a defendant must raise a Batson claim to have a Batson claim; that is true of any legal argument. But the Supreme Court has never gone so far as to impose specific requirements on the states in the Batson context. In Batson, the Supreme Court “imposed no new procedural rules and declined either ‘to formulate particular procedures to be followed upon a defendant’s timely objection to a prosecutor’s challenges,’ or to decide when an objection must be made to be timely.” Ford v. Georgia, 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (quoting Batson, 476 U.S. at 99-100, 106 S.Ct. 1712). There was a reason for that. Federal courts, as a general rule, do not tell state courts when and how to require an objection, and “[t]he appropriateness ... of looking to local rules for the law governing the timeliness of a constitutional claim is ... clear.” Id. (emphasis added); see also Hogan v. McBride, 74 F.3d 144, 146 (7th Cir.1996) (“failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court.”). We do not think any reasonable reader could understand the state court to have relied on a federal directive that does not exist.
Third, even if Richardson’s premise— that the state court derived a timely objection requirement from Batson itself — was accurate, his conclusion would still be wrong, because the effect of a failure to comply with that requirement is, by definition, a question of state law. Different courts make different rules regarding the effect of a basic failure to raise an objection when and where one is required; the contrast between our own waiver/forfeiture distinction and the Illinois approach provides a good example. These rules are always within the province of the court *271 system in which they are to be applied. Under the law of the Supreme Court and of this circuit, a federal court must respect a state court’s application of its own rules of basic procedure. Bute v. Illinois, 333 U.S. 640, 668, 68 S.Ct. 763, 92 L.Ed. 986 (1948) (referencing the “basic and historic power of the states to prescribe their own local court procedures”); Coleman v. O’Leary, 845 F.2d 696, 700 (7th Cir.1988) (observing that “the question of whether a state court properly applied its state procedural rules is a matter of state law”). Richardson admits his claim was resolved on the basis of waiver. It makes little difference what exactly was waived; this sort of basic procedural waiver is a resolution on state law grounds.
To reiterate, the Illinois Supreme Court’s opinion was not ambiguous. It clearly did not rely on a rule created by Batson, given that it cited and relied on Illinois case law both predating and postdating that decision. Furthermore, Richardson does not argue that the court based its judgment on anything other than waiver, and waiver is an independent state law ground. The remaining question is whether it is an “adequate” ground to presumptively foreclose our review.

2. Adequacy of Waiver Finding

A state law ground must be “adequate,” in addition to independent, to foreclose federal review. For a procedural default to be considered an adequate state law ground, the rule under which it is invoked must have been firmly established and regularly followed as of the time when the procedural default occurred. James v. Kentucky, 466 U.S. 341, 348-49, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984); Ford, 498 U.S. at 423-24, 111 S.Ct. 850; see also Smith v. McKee, 598 F.3d 374, 382 (7th Cir.2010); Franklin v. Gilmore, 188 F.3d 877, 882 (7th Cir.1999). Only then can a petitioner be “deemed to have been apprised of its existence.” NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).
Richardson argues that the rule under which he procedurally defaulted was not in place at the time of his trial because Batson had not yet been decided. But Richardson did not default an objection to the jury composition because of Batson; he defaulted an objection to the jury composition because he did not make one, and because, under Illinois law pre-dating and post-dating both Batson and his trial, that is waiver.[6] As the court explained, “a defendant who failed to object to the prosecution’s use of peremptory challenges under the old rule of Swain cannot receive on appeal the benefit of the new rule announced in Batson.” 245 Ill.Dec. 109, 727 N.E.2d at 368. The cases cited by the Illinois Supreme Court show that the waiver rule concerning objections to jury composition existed at the time of Richardson’s trial, see People v. Gaines, 88 Ill.2d 342, 58 Ill.Dec. 795, 430 N.E.2d 1046, 1054 (1981) (refusing to consider challenge to racial composition of jury when defendant did not object before jury was sworn), and that it has been regularly followed since. See, e.g., People v. Pecor, 153 Ill.2d 109, 180 Ill.Dec. 50, 606 N.E.2d 1127 (1992). Accordingly, the Illinois waiver rule is an adequate state law ground for a judgment.
The Illinois Supreme Court’s finding that Richardson waived his Batson claim by failing to make a contemporaneous objection to the prosecutor’s use of peremp- *272 tories or to the composition of the jury was an independent and adequate state law ground for the judgment. Richardson procedurally defaulted that claim. The next question is whether we may reach the merits nonetheless.

3. Cause and Prejudice

Because the independent and adequate state law ground rule is prudential and not jurisdictional, we may excuse a procedural default if the petitioner can show both cause for and prejudice from the default or can demonstrate that the district court’s failure to consider the claim would result in a fundamental miscarriage of justice. Bolton v. Akpore, 730 F.3d 685, 696 (7th Cir.2013). Richardson does not argue that a miscarriage of justice has occurred, but he does argue cause and prejudice to excuse the default. We review the cause and prejudice questions de novo. Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir.2010).
Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim. Lewis, 390 F.3d at 1026. Richardson argues three potential causes to excuse his default: (1) that trial counsel was constitutionally ineffective for failing to object to the prosecution’s use of peremptories; (2) that appellate counsel was constitutionally ineffective for failing to raise a Batson claim on direct review, when Batson had already been decided; and (3) that there was no reasonable basis for a challenge to the prosecution’s use of peremptories at the time of trial, relying on the rule of Reed v. Ross, 468 U.S. at 17, 104 S.Ct. 2901. We address Richardson’s arguments sequentially.

a. Performance of Trial Counsel

Meritorious claims of ineffective assistance can excuse a procedural default. Brown v. Watters, 599 F.3d 602, 609 (7th Cir.2010) (citing Murray v. Carrier, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). But those claims must themselves be preserved; in order “to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, [a petitioner is] required to raise the claims through one full round of state court review, or face procedural default of those claims as well.” Gray, 598 F.3d at 330.
Richardson never presented his claim of ineffective assistance of trial counsel for one full round of review. He did not present it at all on direct review, and he did not present it to the Illinois Supreme Court on collateral review. On the contrary, he affirmatively abandoned it. 245 Ill.Dec. 109, 727 N.E.2d at 369. This claim is procedurally defaulted, and Richardson offers no argument to save it. It therefore cannot serve as cause to avoid his default on the Batson claim.

b. Performance of Appellate Counsel

Richardson’s second argument for cause is his assertion that appellate counsel was constitutionally ineffective for failing to raise the Batson issue on direct appeal. Richardson did independently preserve this claim, arguing it at every level in the state court collateral review process. To establish ineffective assistance sufficient to excuse a procedural default, a petitioner must satisfy the familiar two-part test from Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052. He must show that counsel’s performance was objectively deficient and that the deficient performance prejudiced his case. The Illinois Supreme Court concluded that appellate counsel was not ineffective for failing to argue a waived claim.
*273 In our circuit, when we review a state court’s resolution of an ineffective assistance claim in the cause-and-prejudice context, we apply the same deferential standard as we would when reviewing the claim on its own merits. Gray, 598 F.3d at 330-31; Wrinkles v. Buss, 537 F.3d 804, 813 (7th Cir.2008). In other words, ineffective assistance only provides cause to excuse a default if the state court decision with respect that ineffective assistance claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); Wrinkles, 537 F.3d at 813. Other courts review nested ineffective assistance issues de novo, or have refrained from deciding which standard of review to apply. See, e.g., Janosky v. St. Amand, 594 F.3d 39, 44-45 (1st Cir.2010) (acknowledging circuit split); Hall v. Vasbinder, 563 F.3d 222, 236-37 (6th Cir.2009) (applying de novo standard of review in the cause and prejudice context); Fischetti v. Johnson, 384 F.3d 140, 154-55 (3d Cir.2004) (same); but see Roberson v. Rudek, 446 Fed.Appx. 107, 109 (10th Cir.2011) (implicitly agreeing with our approach by affirming district court’s invocation of AED-PA deference).
The standard of review makes no difference here. Richardson did not receive ineffective assistance of appellate counsel. In order for the prejudice prong of the Strickland test to be satisfied, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. We know that there is no chance the outcome would have been different. If Richardson’s appellate attorney had tried to challenge the prosecution’s use of peremp-tories before the Illinois Supreme Court on direct appeal, it would have found that the claim was waived through trial counsel’s failure to contemporaneously object — just as it found when faced with the exact same question on collateral review. Because appellate counsel did not provide constitutionally ineffective assistance, the performance of appellate counsel cannot excuse Richardson’s procedural default.
c. Reed v. Ross
The district court found that there was cause to excuse Richardson’s procedural default because no reasonable basis existed for a challenge to the prosecution’s use of peremptories at the time of trial, relying on Reed v. Ross, 468 U.S. 1, 104 S.Ct. 2901. In Reed, the Supreme Court first identified three situations in which it might be said to announce a “new” rule:
First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.
468 U.S. at 17, 104 S.Ct. 2901 (citations and internal markup omitted). It then explained that when a case falling into one of the first two categories is given retroactive application, “there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted.” Id. Under such circumstances, cause to excuse a procedural default is present.
*274 Even if we assume that Reed v. Ross is still valid law,[7] we cannot agree with the district court’s invocation of it in the case before us. Batson did overrule Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), to the extent that the two cases were in conflict. 476 U.S. at 100 n. 25, 106 S.Ct. 1712. But Batson did not invent the rule that a state violates the Equal Protection Clause when a prosecutor uses peremptory challenges to strike jurors on account of their race, nor did it conflict with Swain in that regard. Quite to the contrary, it found that rule in Swain itself. See Batson, 476 U.S. at 91, 106 S.Ct. 1712 (“[Swain ] went on to observe ... that a State may not exercise its challenges in contravention of the Equal Protection Clause.”). For that matter, Swain did not invent the rule, either; it had existed for decades. See, e.g., Norris v. Alabama, 294 U.S. 587, 589, 55 S.Ct. 579, 79 L.Ed. 1074 (1935) (explaining that the principle that the exclusion of individuals from grand jury service on account of their race is constitutionally problematic applies equally to exclusion from service on petit juries).
That rule — the rule that the use of per-emptories to exclude persons from service on the petit jury on account of race violates the Equal Protection Clause — is the “legal basis” of Richardson’s claim in this case. Batson did not overrule Swain with regard to that legal basis. It did the opposite; it affirmed it. Richardson therefore cannot argue that the legal basis of his claim was unavailable before Batson, and he cannot rely on the rule of Reed v. Ross.
To be sure, Batson did overrule Swain with respect to the evidentiary burden placed on a defendant claiming unconstitutional use of peremptories. Swain created a presumption, rooted in the history of peremptory strikes at common law, that the prosecution was using those strikes properly. 380 U.S. at 222, 85 S.Ct. 824. The presumption could only be overcome with evidence that the peremptory strike system was being perverted, which proved to be an exceedingly difficult standard to meet. See Batson, 476 U.S. at 91-93, 106 S.Ct. 1712. Batson changed the quantum of proof necessary to make out a prima facie case of discrimination, laying out the now-familiar burden-shifting framework and making it possible to prove discrimination with evidence intrinsic to a single case. But none of that means Batson created a new claim that was not available to Richardson at the time of his trial. It simply means Batson made his pre-exist-ing constitutional claim substantially less difficult to prove. According to the Supreme Court, that is not cause. Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (“the question is not whether subsequent legal developments have made counsel’s task easier, but whether at the time of the default the claim was ‘available’ at all.”). Thus, Richardson’s default is not excused.
We note, significantly, that our understanding of the Swamr-Batson transition is based on the words of the Supreme Court itself:
In Swain v. Alabama, the Court held that, although the use of peremptory challenges to strike black jurors on account of race violated the Equal Protection Clause, a defendant could not establish such a violation solely on proof of the prosecutor’s action at his own trial. *275 Batson overruled that portion of Swain, changing the standard for proving unconstitutional abuse of peremptory challenges.
Allen v. Hardy, 478 U.S. 255, 258-59, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (internal citations omitted) (emphasis added). In other words, as we have said, Batson did not change the right; it changed the standard of proof. The dissent reads the transition differently, and not, in a vacuum, unreasonably. We believe, however, that we are bound to honor the Supreme Court’s interpretation of its own prior case law.
In that, we are joined by every circuit court to consider this issue. See Ruff v. Armontrout, 77 F.3d 265, 267 (8th Cir.1996); Pitts v. Cook, 923 F.2d 1568, 1572-73 (11th Cir.1991); Williams v. McCarthy, 879 F.2d 866 (9th Cir.1989) (unpublished table decision); Jones v. Butler, 864 F.2d 348, 363-64 (5th Cir.1988). Although the rationales provided by our sister circuits differ in some respects from our own, we have all reached the conclusion that Bat-son did not work a change in existing law sufficient to excuse a failure to object under Swain. Without cause to excuse Richardson’s default, we need not ask whether he is actually prejudiced by it. Our review is foreclosed, and we reverse the district court’s grant of his petition.

B. Other Crimes Evidence

Richardson appeals the district court’s denial of his claim concerning the admission of certain other crimes evidence. Although Richardson was only charged with crimes relating to the April 1, 1980, armed robbery at Twin Foods & Liquors, the prosecution also introduced evidence linking him to armed robberies taking place in the neighborhood on April 5, 1980, and May 4, 1982. The last state court to consider the issue was the Illinois Supreme Court on direct review, which found that the April 5, 1980, evidence was “highly relevant and admissible” for the purpose of identifying Richardson as the April 1st shooter, and that, while there was no justifiable basis for the admission of the May 4th evidence, the erroneous admission was harmless.
A habeas corpus petitioner may only obtain relief if he shows that he is in custody “in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2254(a). That means an erroneous admission under state rules of evidence is no concern of ours unless it is so egregiously prejudicial as to implicate constitutional principles. Accordingly, Richardson couches his claim in due process terms. The district court correctly noted that claims based on the “catch-all sense of due process” almost always fail. 855 F.Supp.2d at 816 (quoting Hammer v. Karlen, 342 F.3d 807, 811 n. 3 (7th Cir.2003)). State court evidentiary rulings only implicate the Due Process Clause when “evidence ‘is so extremely unfair that its admission violates fundamental conceptions of justicef.]’ ” Perry v. New Hampshire, — U.S. - , 132 S.Ct. 716, 723, 181 L.Ed.2d 694 (2012) (quoting Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). The district court did not believe that lofty standard was met and denied relief. We review de novo, Ebert v. Gaetz, 610 F.3d 404, 411 (7th Cir.2010), and we agree.
Even if we assume Richardson properly preserved the constitutional claim,[8] we agree with the district court. *276 Our consideration of the Illinois Supreme Court’s decision is deferential, and we will grant relief only if the state court decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The circumstances make it difficult to coherently apply AEDPA deference to the Illinois Supreme Court’s decision' — -it was based entirely on state rules of evidence. But a state court decision that does not cite federal precedent is still consistent with federal law so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court’s decisions. Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002).
The Illinois Supreme Court did not contradict any federal principles, let alone any principles established by the United States Supreme Court itself. When engaging in an evidentiary due process analysis, we often simplify the inquiry by asking whether the probative value of the evidence is greatly outweighed by the prejudice to the accused. United States ex rel. Palmer v. DeRobertis, 738 F.2d 168, 171 (7th Cir.1984) (citing United States v. Pate, 426 F.2d 1083, 1086 (7th Cir.1970)). In this case it is not.
First, we agree with the Illinois Supreme Court that the April 5, 1980, evidence was extremely probative of Richardson’s guilt. It gave the prosecution the ability to use ballistics evidence to tie additional eyewitness identification testimony to Richardson as the perpetrator of both offenses. In a case where physical evidence was hard to come by, the probative value of that link cannot be overstated. To whatever extent it was also prejudicial to Richardson’s case (probative evidence always is — that’s the point), that prejudice does not greatly outweigh the probative value.
Second, we further agree that the May 4, 1982, evidence was not particularly prejudicial. The testimony was brief and came with a limiting instruction. See Soltys v. Costello, 520 F.3d 737, 744 (7th Cir.2008) (“We presume that juries follow the instructions given them by the court.”); 3M v. Pribyl, 259 F.3d 587, 600 (7th Cir.2001). There is no reason to believe that it influenced the jury so heavily and so improperly as to violate fundamental conceptions of justice. Perry, 132 S.Ct. at 723.
Finally, we note that we reached these conclusions by evaluating the effect of this evidence within the context of the trial in which it was admitted — the same trial in which the defendant’s purportedly exculpatory witness was not permitted to testify. There is no need to separately consider the cumulative effect of that issue. We affirm the district court’s treatment of Richardson’s due process claim.

C. Ineffective Assistance of Counsel at Sentencing

Richardson appeals the district court’s denial of his claim that he received ineffective assistance of counsel during the sentencing phase. During the sentencing phase, the State of Illinois introduced evidence of years’ worth of violent criminal activity and delinquency under supervision. Richardson’s strategy in mitigation was to continue to protest his innocence, and his attorney also called his mother and the mother of his children to the stand to testify in support of his character. Defense counsel did not, however, introduce *277 any evidence of Richardson’s allegedly troubled childhood or his below-average intelligence. On collateral review, Richardson’s attacked his attorney’s performance.
The Illinois Supreme Court applied the Strickland standard and found that Richardson failed both prongs of the test. With respect to performance, the court found that trial counsel’s decision not to pursue or investigate any evidence justifying or excusing Richardson’s conduct was reasonable in light of the fact that Richardson intended to testify as to his own innocence; it might undermine Richardson’s credibility to juxtapose his “I did not do it” testimony with a full batch of “this is why he did it” evidence. With respect to prejudice, the court reviewed Richardson’s vast and violent criminal history, offered by the State in aggravation, and concluded that any evidence of childhood, social, or mental difficulty would not have swayed the trial court away from a sentence of death. The district court, applying the deferential AEDPA standard, denied Richardson’s request for relief. We review de novo.
Putting aside the performance prong of the Strickland test, we affirm the denial of Richardson’s claim because a reasonable jurist could certainly conclude, as did the Illinois Supreme Court, that the introduction of the evidence Richardson sought would not have changed the sentence handed down by the trial court.[9] Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Griffin v. Pierce, 622 F.3d 831, 844 (7th Cir.2010) (‘When challenging his sentence, a petitioner must show that but for counsel’s errors, there is a reasonable probability that he would have received a different sentence.”). When engaging in the probability inquiry, a court should “consider ‘the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the [later] proceeding’ — and ‘reweig[h] it against the evidence in aggravation.’ ” Porter v. McCollum, 558 U.S. 30, 41, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (quoting Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The Illinois Supreme Court did. It concluded that a trial court that sentenced Richardson to death based on the fact that he was a convicted murderer and a proven recidivist with a violent criminal past would not be appreciably less likely to sentence him to death if it was also made aware that he was mentally troubled. Not every jurist will agree with that conclusion, but it was certainly not an unreasonable one. We affirm the district court’s treatment of this claim.
III. Conclusion
For the reasons stated above, we AFFIRM in part and REVERSE in part. We reverse the district court’s grant of habeas relief based on Richardson’s defaulted challenge to the prosecution’s use of peremptories; he has not shown cause to excuse his failure to contemporaneously object. We affirm the district court’s denial of Richardson’s petition on evidentia-ry/due process and ineffective assistance grounds. The summary effect is that Richardson’s petition for a writ of habeas corpus is denied in full.

. Richardson's sentence has since been commuted to life in prison without the possibility of parole.

. The district court was correct to consider the question of prejudice as dependent upon the merits, without engaging in a harmless error analysis. “Batson itself as well as the cases that follow it confirm that when a violation of equal protection in jury selection has been proven, the remedy is a new trial, without the need for any inquiry into harmless error or examination of the empaneled jury.” Winston v. Boatwright, 649 F.3d 618, 627 (7th Cir.2011). In other words, a Batson violation is a structural error. Id. at 628-29.

. Although the Federal Rules of Evidence are considered federal statutory law and are codified in Title 28 of the United States Code, they apply, by their terms, only to proceedings in federal courts. Fed.R.Evid. 101(a).

. This first sort of procedural default is an outgrowth of the statutory requirement that a habeas petitioner exhaust his remedies in state court before taking his case to federal court. "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, see 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts.” Lewis, 390 F.3d at 1025. “Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.” Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Cf. Lieberman v. Thomas, 505 F.3d 665, 669-70 (7th Cir.2007) (failure to exhaust is a procedural default).

. We need not discuss whether Richardson’s failure to object constituted a “waiver” or a "forfeiture" under our own case law, as the Illinois Supreme Court is free to decide what to call such a failure within that state’s judicial system.

. This is not to say that Richardson’s argument concerning the nonexistence of a Batson claim at the time of his trial has no place in this appeal at all. While it is not relevant to determining whether a default occurred in the first place, it does factor into our consideration of whether there is cause to excuse that default.

. We have observed that the Supreme Court's later decision in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), “leaves no independent role for a doctrine treating legal change as 'cause.’ ” Prihoda v. McCaughtry, 910 F.2d 1379, 1386 (7th Cir.1990).

. Richardson did couch the evidentiary claim in constitutional terms before the Illinois Supreme Court by describing it as such in a supplemental memorandum, but it is not clear whether he initially argued it as such at the trial level or whether a failure to do so *276 under these circumstances would defeat the complete round requirement.

. Ultimately, due to the commuting of his sentence, Richardson would not be entitled to relief unless the trial court would have handed down a sentence to a term of years.