In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 13-2008

STEVEN D. JOHNSON,

*Petitioner-Appellant,*

*v.*

BRIAN FOSTER,

*Respondent-Appellee.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 11-CV-1137 — **Nancy Joseph**, *Magistrate Judge.*

_____

ARGUED SEPTEMBER 12, 2014 — DECIDED MAY 6, 2015

_____

Before EASTERBROOK, SYKES, and TINDER, *Circuit Judges.*

SYKES, *Circuit Judge.* A jury convicted Steven Johnson of several state gun crimes arising out of a shootout in Milwaukee. He challenged his convictions in a state post-conviction motion, but the trial court denied the motion and the state court of appeals affirmed. Johnson had 30 days to petition for review by the Wisconsin Supreme Court. He applied for a loan from the prison Business Office to help

cover the cost of the paper, photocopying, and postage necessary to file the petition; Wisconsin law permits inmates to borrow up to $100 annually for that purpose. The Business Office denied his request, but Johnson contends that he met the eligibility requirements and the loan was unlawfully denied.

Johnson never filed a petition for review in the state supreme court. Instead, he sought federal habeas relief under 28 U.S.C. § 2254. Federal courts are normally precluded from reviewing the habeas claims of state prisoners who procedurally default their claims by failing to present them through one full round of state-court review. A default can be excused, however, if the prisoner shows that prison officials interfered with his ability to comply with the state court's procedural rules. Johnson argues that the wrongful denial of his loan request should excuse his failure to petition the state supreme court for review.

The district court rejected this argument, and we affirm. Johnson has not established that the denial of his loan application was an objective, external impediment to his ability to comply with the state court's procedural rules or that it actually prevented him from petitioning for review in the Wisconsin Supreme Court. Moreover, Johnson's argument rests on his contention that the Business Office misinterpreted or misapplied prison policies governing the loan program. No state court has ruled on that question. For a federal habeas court to excuse a procedural default based on its own interpretation of a state prison policy—without guidance from the state courts—would be starkly contrary to the principles of federalism and comity that constrain all federal habeas review.

## I. Background

On November 8, 2007, Steven Johnson exchanged gunfire with his ex-girlfriend's brother-in-law in the parking lot of a Milwaukee-area Family Dollar store. He was charged with four gun crimes under Wisconsin law. A jury found him guilty on all counts, and he was sentenced to 22 years in prison.

Johnson alleges in his federal habeas petition that two constitutional violations occurred during his state-court proceedings: First, the court refused to continue the preliminary hearing in order to give him time to hire the lawyer of his choice, and later it denied his multiple requests to represent himself.

Johnson attempted to raise these and other claims in a direct appeal. Because his filing was untimely, however, the trial court construed it as a motion for postconviction relief under section 974.06 of the Wisconsin Statutes and denied it. Johnson timely appealed that ruling to the Wisconsin Court of Appeals.

The appeal remained pending for well over two years. At some point Johnson sought reinstatement of his direct appeal rights but that motion was denied. In December 2011, while his appeal was still pending, he filed a premature § 2254 petition in federal district court seeking habeas review. On April 19, 2012, before the federal court took up his habeas petition, the Wisconsin Court of Appeals affirmed the denial of his postconviction motion. Johnson had 30 days from that date to petition the Wisconsin Supreme Court for review of the appellate court's decision. *See* WIS. STAT. §§ 808.10(1), 809.62(1m).

In early May 2012, Johnson applied for a loan from the prison Business Office under a state program that permits loans of up to $100 per year to assist prisoners in paying for the paper, photocopying, and postage needed to file legal documents. *See* WIS. ADMIN. CODE DOC § 309.51(1); WIS. STAT. § 301.328(1m). Johnson had used the loan program earlier that year, but this time his application was rejected. When Johnson asked for an explanation, the Business Office promptly responded as follows:

> A review of your income and expenditures shows that you had deposits of $55.00 and canteen expenditures of $17.90 over the last 60 days. The canteen purchases were primarily junk food. These funds could and should have been used to meet your legal needs.
>
> We will reconsider your request to reinstate your legal loan at a future date. In the meantime, you may take advantage of the free weekly envelope/mailing for those who qualify.

Johnson doesn't dispute the Business Office's numbers, but he says that all the money not spent at the canteen was automatically withheld to pay for mandatory fees and outstanding debts, including the principal on his prior legal loans.[1]

---

[1] Johnson also says that he only bought food at the canteen on Fridays, when the kitchen served fish (to which he's allergic). His trust-account statement shows all of his canteen charges were on Mondays, though there may be a delay between the date charges are incurred and when they're posted. In any case, while we sympathize with Johnson's predicament, canteen purchases are, by definition, a discretionary use of funds.

Johnson never filed a petition for review in the Wisconsin Supreme Court. Accordingly, the district court denied his § 2254 petition based on procedural default—his failure to complete one full round of state-court review. The court concluded that the procedural default was not excused by the Business Office's rejection of Johnson's loan request because he had no legal entitlement to a loan and the Business Office provided a rational reason for the denial. The court entered final judgment dismissing the habeas petition and denied a certificate of appealability.

Johnson filed a notice of appeal. A motions judge of this court construed the notice as a request for a certificate of appealability and authorized an appeal on the two constitutional claims mentioned above. The order also instructed the parties to address the issue of procedural default.[2]

## II. Discussion

The first and ultimately dispositive question is whether Johnson's procedural default may be excused. We review the district court's ruling on that issue de novo. *Miller v. Smith*, 765 F.3d 754, 764 (7th Cir. 2014).

Federalism and comity principles pervade federal habeas jurisprudence. One of these principles is that "in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's

---

[2] The order also appointed pro bono counsel to assist Johnson on appeal. Attorneys Thomas M. Dunham and Phoebe N. Coddington of Winston & Strawn LLP accepted the representation and have ably discharged their duties. We thank them for their assistance to their client and the court.

federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). This requirement has two components: the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction, and the exhaustion must not be attributable to the petitioner's failure to comply with the state court system's procedural rules. "In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default … ." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (internal quotation marks omitted).

Procedural default is one application of the "adequate and independent state ground" doctrine: "When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed."[3] *Richardson*, 745 F.3d at 268

---

[3] An adequate and independent state-law ground for a state-court decision denies the Supreme Court certiorari jurisdiction. *See Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Thus, the procedural-default rule prevents the anomaly of federal habeas courts reviewing state-court decisions that the Supreme Court itself would be unable to review. *See Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991) ("Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an

(quotation marks omitted). The violation of a state court's procedural rules is an adequate and independent state-law basis for denying a petitioner's requested relief. Therefore, a habeas petitioner who has procedurally defaulted in state court—and thus has not fairly presented those claims through one complete round of state-court review—cannot have his defaulted claims heard in federal court. In this way, federalism and comity principles protect the integrity of a state court system's procedural rules and ensure that the state judiciary has the first opportunity to correct constitutional errors. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system.").

As we've noted, Johnson's direct appeal was deemed untimely, so the state trial court construed the filing as a post-conviction motion and denied it. Johnson appealed, and on April 19, 2012, the Wisconsin Court of Appeals affirmed. Under the state court's procedural rules, Johnson had 30 days from that date to petition the Wisconsin Supreme Court for review. *See* WIS. STAT. §§ 808.10(1), 809.62. Johnson never filed a petition for review and cannot do so now. Thus, although he has exhausted review in the state courts (in the sense that the doors of the Wisconsin Supreme Court are no longer open to him), his claims are procedurally defaulted because the exhaustion resulted from his own failure to comply with state procedural rules. Johnson concedes as much but argues that his default should be excused.

---

end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.").

A federal court may excuse a procedural default if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, *see Murray v. Carrier*, 477 U.S. 478, 491 (1986), or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard, *see Schlup v. Delo*, 513 U.S. 298, 315 (1995). The second ground is satisfied only when the claimed constitutional violation probably caused an innocent person to be convicted. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Johnson does not make that argument here. Instead he contends that his procedural default should be excused for cause and prejudice.

"Cause is defined as an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (internal quotation marks omitted). "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." *Id.*

The Supreme Court has not provided "an exhaustive catalog of … objective impediments" that satisfy the cause requirement. *Murray*, 477 U.S. at 488. But interference by state officials that makes compliance with a procedural rule "impracticable" is one recognized impediment. *Id.* (quotation marks omitted). To be "external to the defense," the cause must be "something that cannot fairly be attributed to" the petitioner.[4] *Coleman*, 501 U.S. at 753.

---

[4] Perhaps the most common reason to excuse a procedural default based on interference by state officials is the concealment or suppression of evidence that should have been disclosed by prosecutors under *Brady v.*

For example, we recently said that confiscation of a prisoner's legal materials can establish cause for a procedural default. *Weddington*, 721 F.3d at 466; s*ee also Buffalo v. Sunn*, 854 F.2d 1158, 1165 (9th Cir. 1988) (recognizing cause if a prisoner was denied access to his legal materials, in contravention of prison policy, during a lockdown). Other courts have recognized interference by prison officials as a cause to excuse a procedural default if the prisoner tendered his legal documents to the prison mailroom before the filing deadline, but they are not received by the court clerk until after the deadline has passed.[5] *See, e.g.*, *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013); *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999); c*f. Ray v. Clements*, 700 F.3d 993, 1006 (7th Cir. 2012) (holding that the prison mailbox rule applies when

---

*Maryland. See, e.g.*, *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Crivens v. Roth*, 172 F.3d 991, 995 (7th Cir. 1999).

[5] The record indicates that after his loan request was denied, Johnson cobbled together a Wisconsin Supreme Court petition and submitted it to the prison Business Office for mailing. But Johnson did not raise a prison-mailbox argument in the district court *or* on appeal, and nothing in the record addresses why this document was never received by the state supreme court, so the issue is waived. After oral argument Johnson (acting pro se) attempted to supplement the record with documents purporting to show that his petition was not mailed because he did not have sufficient available funds to pay for postage. We denied this belated attempt to supplement the record. And waiver aside, although Wisconsin has adopted a tolling rule similar to the prison-mailbox rule, *see State ex rel. Nichols v. Litscher*, 635 N.W.2d 292 (Wis. 2001), there's no reason to believe that Wisconsin's rule permits prisoners to send correspondence submitted to the mailroom without proper postage. *Cf. Ingram v. Jones*, 507 F.3d 640, 645 (7th Cir. 2007) ("Although prisoners have right of access to courts, they do not have right to unlimited free postage."). So the rule would not have excused Johnson's default anyway.

determining whether a petitioner's state postconviction motion was properly filed for the purposes of triggering 28 U.S.C. § 2244(d)(2)'s one-year statute of limitations). A third possible cause arises when a prisoner is housed out of state and the resources available in the prison library are inadequate for him to learn the procedures of the state where he needs to file. *See, e.g.*, *Watson v. New Mexico*, 45 F.3d 385, 388 (10th Cir. 1995). *But see Malone v. Vasquez*, 138 F.3d 711, 719 (8th Cir. 1998) ("While being incarcerated in California may have made filing his petition in Missouri slightly more cumbersome, Malone has not shown it interfered with his ability to file. His California incarceration did not amount to state interference with his access to the courts and is therefore not cause.").

The claimed impediment here—the Business Office's denial of Johnson's request for a legal loan—is not quite like any of these examples. To properly evaluate it, we need to clarify exactly what Johnson's "cause" theory is. After all, he "has no constitutional entitlement to subsidy to prosecute a civil suit." *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003) (internal quotation marks omitted); *see* WIS. STAT. § 974.06(6) ("Proceedings under this section [i.e., collateral postconviction motions] shall be considered civil in nature … ."). Acknowledging this, Johnson rests his argument on the loan-eligibility criteria found in state regulations and prison policies.

Recall that the Business Office denied Johnson's loan request because he had funds available in his prison account and had recently spent money on junk food from the canteen rather than saving it for his anticipated legal expenses. Johnson argues that this decision improperly interpreted

and applied the eligibility requirements for the loan program. He also contends that he relied on the published loan-eligibility criteria when he decided to spend his money at the canteen. In other words, by promulgating (and then disregarding) the loan-eligibility standards, the prison altered the cost-benefit analysis he applied when deciding whether to spend his money at the canteen or save it to pay the expenses associated with a petition for review.

Loans to prisoners for legal expenses are governed by section 301.328 of the Wisconsin Statutes, which (among other requirements not relevant here) caps the annual loan amount at $100. *See* WIS. STAT. § 301.328(1m). A state regulation provides that a prisoner's "[c]orrespondence to courts … may not be denied due to lack of funds, except as limited in this subsection." WIS. ADMIN. CODE DOC § 309.51(1). The regulation goes on to say that "[i]nmates without sufficient funds … *may* receive a loan from the institution where they reside," *id.* (emphasis added), which implies some discretion on the part of prison administrators in making the loans.[6] Johnson was not over the annual limit when he applied for a loan in May 2012, so he takes the position that his loan request was unlawfully denied. That is, he insists that the Business Office's reliance on any factor *other than the cap* was improper.

---

[6] The regulation specifies a $200 annual loan limit, but section 301.328 of the Wisconsin Statutes was amended in 2011 to impose a $100 annual cap. *See* 2011 Wis. Act 32, § 3014M (creating subsection (1m) of section 301.328, the $100 cap, effective July 1, 2011). The regulation has not been updated to reflect the $100 cap.

This is not the interpretation adopted by the Division of Adult Institutions ("DAI"), which has published loan-eligibility policies to guide prison administrators in implementing the program. DAI Policy #309.51.01(II) provides that "[c]riteria used by facility staff to determine eligibility or ineligibility for a legal loan include, but are not limited to" ten listed factors. For example, the policy permits consideration of "[i]nmate account balances," the "[n]ature of pending litigation and current legal needs," and "[t]he inmate's history of repayment of legal loans." DAI Policy #309.51.01(II)(A), (E), (I). The Business Office's reason for denying Johnson's application comports closely with subsection (D) of the policy: "[r]ecent spending patterns, *including canteen purchases*, outside purchases, and funds to family." *Id.* at (D) (emphasis added).

Johnson insists that he could not have been expected to manage his own finances "in anticipation of a legal need that did not exist at the time of his purportedly irresponsible canteen purposes." If Johnson is suggesting that he had no general responsibility to manage his funds in anticipation of a forthcoming important legal need, he's incorrect: "[L]ike any other civil litigant, [an inmate] must decide which of his legal actions is important enough to fund." *Lindell*, 352 F.3d at 1111. It's true that Johnson's appeal was pending for a long time and he could not know precisely when it would be decided, but he could have maintained a reserve sufficient to finance his petition for review whenever the court of appeals announced its decision. Instead he chose to deplete his personal funds and rely on his ability to access a legal loan.

Furthermore, to qualify as good cause to excuse Johnson's procedural default, the denial of his loan

application must have made the timely filing of a petition for review "impracticable" and it must be a factor "external" (that is, not attributable) to him. Even if we were to accept Johnson's argument that the Business Office misinterpreted or misapplied the loan-eligibility regulation and policy, it's not clear that the loan denial made it "impracticable" for him to file a petition for review or that it qualifies as a cause "external" to him.

Johnson argues that the denial of his loan application prevented him from filing a petition for review because he had depleted his own funds in reliance on the loan-eligibility criteria. *See McCleskey*, 499 U.S. at 497–98 ("For cause to exist, the external impediment … must have prevented petitioner from raising the claim."). In other words, the Business Office's misapplication of the eligibility criteria pulled the rug out from under him.

We've rejected a similar reliance-based argument before, albeit under somewhat different circumstances. In *Moore v. Casperson*, we held that a prisoner's reliance on circuit precedent later overturned by the Supreme Court was insufficient to establish cause to excuse a procedural default. 345 F.3d 474, 487 (7th Cir. 2003). We explained in *Moore* that the "subsequently overruled circuit decision … did not actually impede the effort to comply with any state court rule" but rather "removed an incentive for compliance by indicating (erroneously) that a particular action was not necessary for federal habeas review purposes." *Id*. In other words, reliance on legal precedent is not enough by itself; there must be a discrete, identifiable impediment to the prisoner's *ability* (rather than his motivation) to comply with the state's procedural rules. Applying the same understanding here,

Johnson's purported reliance on the loan-eligibility criteria
may help explain why he didn't keep a larger reserve in his
account, but it did not impede his ability to file a petition for
review in a concrete sense or otherwise make compliance
with the state's procedural rules "impracticable."

In addition to impracticability, Johnson must also show
that the Business Office's loan denial was truly external to
him and not attributable to his own actions. Johnson insists
that under the DOC regulation and DAI policy, he was
entitled to a loan; his canteen spending was not a proper
reason to deny his request. The Business Office obviously
disagreed. Who's right? The answer requires an interpreta-
tion and application of DOC § 309.51(1) and DAI Policy
#309.51.01(II). But a federal habeas court is not the proper
body to adjudicate whether a state court correctly interpret-
ed its own procedural rules, even if they are the basis for a
procedural default.[7] *See Barksdale v. Lane*, 957 F.2d 379, 383–
84 (7th Cir. 1992) ("[A] federal court sitting in habeas corpus
is required to respect a state court's finding of waiver or
procedural default under state law. Federal courts do not sit
to correct errors made by state courts in the interpretation of

---

[7] A few very narrow exceptions to this doctrine exist. *See Mullaney v.
Wilbur*, 421 U.S. 684, 691 n.11 (1975) ("On rare occasions the Court has re-
examined a state-court interpretation of state law when it appears to be
an obvious subterfuge to evade consideration of a federal issue.")
(internal quotation marks omitted); *Kubat v. Thieret*, 867 F.2d 351, 366
n.11 (7th Cir. 1989) (holding that the district court could review a claim
that the state supreme court said was not raised in the petitioner's direct
appeal, and thus was waived, because the record was clear that the claim
had been properly raised).

state law.") (quotation marks omitted). The same rule ap-
plies to administrative regulations and prison policies. *See
Lenz v. Washington*, 444 F.3d 295, 304 (4th Cir. 2006) ("Federal
habeas review is not the best context in which to determine
the propriety of [a state prison policy] … . [C]oncerns of
federalism and comparative expertise militate against feder-
al court supervision of administrative decisions made by
state departments of corrections.").

Here, of course, no state court or administrative adjudica-
tor has addressed Johnson's claim that the Business Office
misinterpreted the loan-eligibility criteria. That's part of the
problem. Johnson never sought review from, much less
exhausted, the inmate complaint review system on this
issue. *See* WIS. ADMIN. CODE DOC §§ 310.04–.11, 310.08 ("An
inmate may use the ICRS to raise significant issues regarding
rules, living conditions, staff actions affecting institutional
environment, and civil rights complaints … ."); s*ee also
Lovell v. Norris*, 198 F.3d 674, 677 (8th Cir. 1999) (holding that
the petitioner "caused his own default by not pursuing the
remedies that Arkansas law afforded him" after a court
officer negligently failed to send documents that he had
requested). The inmate grievance system should have been
Johnson's first step to challenge the decision by the Business
Office. If the unfavorable determination was upheld on
administrative appeal, Johnson would have had the option
to take the matter to state circuit court on certiorari review.
*See State ex rel. L'Minggio v. Gamble*, 667 N.W.2d 1, 7 (Wis.
2003) ("[A] court that is petitioned for a writ of certiorari
regarding a decision by a prison … committee deter-
mines: … whether the committee acted according to law;
[and] whether the committee's action was arbitrary,

oppressive, or unreasonable and represented its will and not its judgment … .").

Without a ruling from a state court or agency that the denial of his loan request was unlawful, we cannot conclude that Johnson's reliance on his ability to access a loan was well placed. If it wasn't, then his inability to file a petition was attributable to the risk he assumed by relying on his own unverified interpretation of the loan-eligibility criteria—not to any external interference by prison officials. Only a Wisconsin court or agency's interpretation of the state regulation and policy—or a concession by the State—could provide us with the authority to excuse Johnson's default on this ground. But since Johnson never presented the issue to any state authority for review, a federal habeas court cannot be the first to interpret the loan-eligibility requirements.

Finally, the record does not support a conclusion that the loan denial actually impeded Johnson's ability to file a petition for review in the Wisconsin Supreme Court. The prison trust-account statement in the record shows that Johnson had $25.80 in available funds as of May 14, 2012, the day his loan request was denied. It's not clear that this amount wouldn't cover the photocopying and postage expenses for a petition for review. As the district court noted, "[e]ven given Johnson's expenditures and withholdings, his prison trust account statement shows a balance of $25.80 … , thus not leaving him completely without funds." Indeed, Johnson doesn't argue that $25.80 would have been insufficient to fund his petition. *See* WIS. ADMIN. CODE DOC § 309.51(2) (capping the price to prisoners for photocopies at 15¢ per page and paper at 2¢ per page).

When asked about this issue at oral argument, Johnson's counsel replied that the record was "confusing" on this point but "there is some information" that Johnson "wasn't able to buy postage or anything with that money based on his current status." This seems to suggest that Johnson was prohibited from accessing part or all of his account balance, but nothing in the record or the briefs supports that claim. We decline to consider it.[8]

In sum, Johnson failed to ask the Wisconsin Supreme Court to review his constitutional claims before bringing them to federal court in a § 2254 habeas petition. He argues that this procedural default should be excused because prison administrators refused to give him a legal loan. But he's not constitutionally entitled to a subsidy, and the denial of his loan request was not an objective, external impediment to compliance with the state court's procedural requirements. Nor did the denial of his loan request actually prevent him from filing a petition for review; as far as we can tell on this record, he had funds available to do so. Because Johnson has not established cause to excuse his procedural default, federal habeas review is precluded. The district court properly denied the § 2254 petition.

AFFIRMED.

---

[8] As we noted in footnote 5, after oral argument Johnson attempted to supplement the record with additional financial statements. We denied leave to supplement the record.