SYKES, Circuit Judge,
dissenting.
“Federalism and comity principles pervade federal habeas jurisprudence.” Johnson v. Foster, 786 F.3d 501, 504 (7th Cir. 2015). “One of these principles is that ‘in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner’s federal rights.’ ” Id. (quoting Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The doctrine of procedural default enforces this principle: A federal court will not hear a state prisoner’s habeas claim unless the prisoner has first presented it to the state courts for one full round of review. Id. (citing Richardson v. Lemke, 745 F.3d 258, 268 (7th Cir. 2014)).
Requiring state prisoners to exhaust state remedies serves important federalism interests. The “state courts are the principal forum for asserting constitutional challenges to state convictions,” Harrington v. Richter, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), and federal habeas review “frustrates both the States’ sovereign power to punish offenders and their good-faith attempts to honor consti *518 tutional rights,” Calderon v. Thompson, 523 U.S. 538, 555-56, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (internal quotation marks omitted). Federal habeas review of state convictions disturbs the State’s “significant interest in repose for concluded litigation ... and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.” Richter, 562 U.S. at 103, 131 S.Ct. 770 (quotation marks omitted). Accordingly, “[fjederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.” Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).
The deferential standard of review adopted in the Anti-terrorism and Effective Death Penalty Act of 1996 (“AED-PA”), 28 U.S.C. § 2254(d), protects these state interests. So does the exhaustion requirement. For this reason, a federal court may review a defaulted claim only in very limited circumstances. The court may excuse a procedural default only if the prisoner (1) demonstrates cause for the default and consequent prejudice or (2) makes a convincing showing of actual innocence, thus establishing that the failure to review the defaulted claim would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50, 111 S.Ct. 2546; Jones v. Calloway, 842 F.3d 454, 461 (7th Cir. 2016).
“Cause” is an objective factor external to the defense that impedes the presentation of the claim to the state courts. Coleman, 501 U.S. at 753, 111 S.Ct. 2546; Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013). Attorney error ordinarily doesn’t satisfy the externality requirement because the defendant’s attorney is his agent and the attorney’s actions are imputed to his principal. Coleman, 501 U.S. at 753, 111 S.Ct. 2546. But attorney error can excuse a procedural default if the error “is an independent constitutional violation,” i.e., a denial of the Sixth Amendment right to the effective assistance of counsel. Id. at 755, 111 S.Ct. 2546. In that situation, the risk of error falls on the State as a corollary to its constitutional duty to provide effective counsel. Id. at 754, 111 S.Ct. 2546. It follows, then, that because there is no Sixth Amendment right to counsel on collateral review, attorney negligence at that stage is not cause to excuse a procedural default. Id. at 755, 111 S.Ct. 2546.
As my colleagues explain, in Martinez v. Ryan, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), the Supreme Court recognized a narrow exception to the Coleman rule. Luis Martinez, an Arizona prisoner, alleged in his federal habeas petition that his trial counsel was constitutionally ineffective in violation of the rule articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He had counsel for his initial collateral-review proceeding, but his attorney did not present this claim to the state courts. Martinez, 132 S.Ct. at 1314. Under Arizona law a claim of ineffective assistance of trial counsel cannot be raised on direct appeal; it must be presented in an initial collateral-review proceeding. Id. The Court held that this procedural requirement of Arizona law warranted an equitable exception to the Coleman rule that an error by posteonviction counsel is not cause to excuse a procedural default. Id. at 1315.
The Court held that if state law requires a prisoner to bring a Strickland claim on collateral review, a default at that stage of the criminal process does not preclude federal habeas review if “there was no counsel or counsel in that proceeding was ineffective.” Id. at 1320. To be eligible for federal review, however, the defaulted Strickland claim must be “a substantial one, which is to say that the prisoner must demonstrate *519 that the claim has some merit.” Id. at 1318. The Court remanded Martinez’s case, directing the lower courts to determine whether his state postconviction counsel was constitutionally ineffective, and if so, whether the underlying claim for ineffective assistance of trial counsel was “substantial.” Id. at 1321.
The Court expanded the Martinez exception in Trevino v. Thaler, — U.S. -, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), making it available to prisoners in states that, though not expressly restricting Strickland claims to collateral review, nonetheless have procedural rules that foreclose the opportunity to develop the factual record necessary to effectively litigate the claim on direct review. Carlos Trevino was a Texas prisoner sentenced to death for murder. He alleged in his federal habeas petition that his trial counsel was ineffective for failing to adequately investigate and present mitigating circumstances in the penalty phase of his trial. Id. at 1915. The state trial judge had appointed new counsel for Trevino’s direct appeal, but the attorney did not raise this claim. The judge appointed still another attorney for collateral review; that attorney too failed to raise the claim.
Martinez could not help Trevino. Unlike Arizona, Texas does not expressly require prisoners to reserve Strickland claims for collateral review. Id. at 1918. But the state’s procedural rules make it “all but impossible” to raise such a claim on direct appeal. Id. at 1920. That’s because a claim of ineffective assistance of trial counsel almost always requires development of a factual record, but the time constraints imposed by Texas law (most notably, the time for preparation of the transcript) eliminate the opportunity to make the necessary record in conjunction with a direct appeal. Id. at 1918. That is, under the procedural rules in place in Texas, it’s “ ‘virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim’ on direct appeal.” Id. (quoting Robinson v. State, 16 S.W.3d 808; 810-11 (Tex. Crim. App. 2000)). For this reason the Texas Court of Criminal Appeals — the state’s highest criminal tribunal — “has explicitly stated that ‘[a]s a general rule’ the defendant ‘should not raise an issue of ineffective assistance of counsel on direct appeal,’ but rather in collateral review proceedings.” Id. at 1920 (quoting Mata v. State, 226 S.W.3d 425, 430, n.14 (Tex. Crim. App. 2007)).
These two features of Texas law — a procedural system that makes it virtually impossible to effectively litigate a Strickland claim on direct review and an affirmative judicial directive not to do so — put Trevino in much the same position as Martinez. The Court concluded that the “procedural design and systemic operation” of the criminal appeal process in Texas was the functional equivalent of Arizona’s rule barring Strickland claims on direct review. Id. at 1921 (“[A] distinction between (1) a State that denies permission to raise the claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference.”). So the Court extended the Martinez exception to prisoners in Texas and other states where the “procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal.” Id.
My colleagues conclude that Indiana is enough like Texas to warrant extending Martinez-Trevino to defaulted Strickland claims in habeas petitions brought by *520 Indiana prisoners. I disagree. Indiana does not by procedural rule make it virtually impossible to litigate a Strickland claim on direct appeal. To the contrary, Indiana explicitly provides a process for doing so: the so-called Davis/Hatton procedure, which “allows a defendant to suspend the direct appeal to pursue an immediate petition for postconviction relief’ in order to develop the factual record necessary to support a Strickland claim at the direct-appeal stage. Woods v. State, 701 N.E.2d 1208, 1219 (Ind. 1998). The Indiana Supreme Court specifically reaffirmed the vitality of the Davis/Hatton procedure in Woods. Id. at 1219-20.
Nor has Indiana’s highest tribunal gone as far as the Texas Court of Criminal Appeals, which specifically directed defendants not to raise these claims on direct review. In Woods — the seminal case on this subject — the Indiana Supreme Court explained that although collateral review is “normally the preferred forum” for a claim of ineffectiveness assistance of trial counsel, direct review remains an appropriate and workable option in light of the Davis/Hatton procedure. Id. at 1219.
Here, in full, is the key passage in the state high court’s opinion:
For the reasons outlined, a postconviction hearing is normally- the preferred forum to adjudicate an ineffectiveness . claim. We nonetheless agree that potential for administrative inconvenience does not always outweigh the costs of putting off until tomorrow what can. be done today: “If there is no reason for delay in presenting a claim, the delay should not be countenanced, for there is a considerable social interest in the finality of criminal proceedings.” [U.S. v.] Taglia, 922 F.2d [413,] 418 [(7th Cir. 1991) ]. If we are dealing with an improperly incarcerated defendant, the cause of justice is plainly better served by making that determination as soon as possible. The same is true even if a retrial is required. Resolving record-based ineffectiveness claims on direct review also has some doctrinal appeal because it is more consistent with the residual purpose of postconviction proceedings. Langley [v. State], [256 Ind. 199] 267 N.E.2d [538,] 541 [ (Ind. 1971) ] (“[T]he permissible scope of review on direct appeal is well defined and broader than that permitted by collateral attack through post conviction relief.”). These considerations can be largely met under a procedure that allows a defendant to suspend the direct appeal to pursue an immediate petition for postconviction relief. Davis v. State, [267 Ind. 152] 368 N.E.2d 1149 (1977); see also Hatton v. State, 626 N.E.2d 442 (Ind. 1993) (reiterating vitality ' of Davis. procedure). This should cover the exceptional case in which the defendant prefers to adjudicate a claim of ineffective assistance before direct appeal remedies have been exhausted. Because of the Davis procedure, the direct appeal is not necessarily an obstacle to speedy adjudication of the adequacy of the representation, as recent cases in which the procedure was invoked for that purpose demonstrate. See Coleman v. State, 694 N.E.2d 269 (Ind. 1998); Brown v. State, 691 N.E.2d 438 (Ind. 1998). Although not to be used as a routine matter in adjudicating the issue of trial counsel’s effectiveness, a Davis request may be appropriate “where the claim asserted arguably requires a certain level of fact finding not suitable for an appellate court.” Lee v. State, 694 N.E.2d 719, 721 n.6 (Ind. 1998), petition for cert. filed, [525 U.S. 1023, 119 S.Ct. 554, 142 L.Ed.2d 461] ( [ ]1998) [ ]).
Id. at 1219-20 (footnote omitted).
The state supreme court went on to fashion a rule against claim splitting, hold *521 ing that all allegations of trial counsel’s ineffectiveness must be consolidated in a single proceeding. More specifically, the court said that “[t]he specific contentions supporting the claim ... may not be divided between the two proceedings.” Id. at 1220. It’s a strong rule of preclusion; if the defendant raises the issue on direct review, he may not do so again in collateral proceedings. Id. The court acknowledged the likelihood that this “all or nothing” requirement would channel many Strickland claims to collateral review: “Ás a practical matter, this rule will likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal. It will certainly deter some.” Id. Still, the court held — unequivocally— that “concerns for prompt resolution of claims lead us to permit ineffective assistance to be raised [on direct appeal] within or without the procedure available pursuant to Davis.” Id.
So Indiana offers defendants a true choice — direct appeal or collateral review — and either forum is a proeedurally viable option for adjudicating a Strickland claim. Indeed, Woods was explicit on this point. “The defendant must decide the forum for adjudication of the issue — direct appeal or collateral review.” Id. In sharp contrast to Texas, both options are fully open in Indiana, and the state provides a meaningful opportunity to litigate the issue at either stage. This takes Indiana outside the rule and rationale of Trevino.
My colleagues focus on the state high court’s strong preference for reserving Strickland claims for collateral review, a preference apparently reinforced by the lower courts and generally followed by the criminal defense bar. Majority Op. at pp. 511-13. That’s not enough to bring Indiana within the ambit of Trevino. The Supreme Court justified extending Martinez to Texas prisoners primarily because that state’s procedural rules make it virtually impossible to effectively raise a Strickland claim on direct appeal. Trevino, 133 S.Ct. at 1918-19. These procedural barriers, in turn, have led Texas courts to admonish defendants not to bring these claims on direct review. It’s true that the Court spent several paragraphs discussing this “strong judicial advice.” Id. at 1920. But the advice of the Texas judiciary played only a supporting role in the Court’s decision; it certainly wasn’t sufficient on its own to support the expansion of Martinez.
Moreover, unlike the Texas Court of Criminal Appeals, the Indiana Supreme Court has not directed defendants to refrain from bringing claims of trial counsel’s ineffectiveness on direct review; it has said, rather, that collateral review is “normally the preferred forum” for these claims. Woods, 701 N.E.2d at 1219. Indeed, as the passage quoted above makes clear, one of the main points of the court’s decision in Woods was to preserve the direct-review option and highlight the availability of the Davis/Hatton procedure for defendants who are concerned about delay but need to make a factual record before bringing a Strickland claim on direct review.
In short, my colleagues’ decision is not so much an-application of Trevino as an unwarranted expansion of it. This has real consequences for criminal litigation in Indiana, for federal habeas review of Indiana convictions, and ultimately for the relationship between the federal and state courts. It is by now canonical that federal habeas review of state convictions is extremely deferential. Under AEDPA the state court’s factual findings are presumed to be correct, § 2254(e)(1), and a federal court may not grant habeas relief unless the state court’s adjudication of a federal claim was contrary to, or an unreasonable *522 application of, clearly established federal law as determined by the Supreme Court, § 2254(d). As the petitioner’s counsel acknowledged in oral argument, Martinez-Trevino creates a moral hazard in the state postconviction process, even where by its terms the doctrine clearly applies. If a prisoner complies with the exhaustion requirement and presents his Strickland claim to the state courts, AEDPA’s highly deferential standard of review applies. If instead he defaults the claim and the Martinez-Trevino exception applies, the Strickland claim gets plenary review in federal court. Given these perverse incentives, we should be wary of expanding the doctrine beyond the limits of its rationale.
As a result of today’s decision, the Indiana district courts will be deluged with defaulted Strickland claims. It is an unfortunate reality in postconviction litigation that ordinary claims of trial error can be easily repackaged as claims of ineffective assistance of trial counsel. Now that Indiana prisoners may use Martinez-Trevino, Indiana district judges will routinely have to contend with the two gateway questions that unlock the door to plenary review of defaulted Strickland claims. A federal judge will have to decide — de novo — whether the prisoner’s postconviction counsel was ineffective, and if so, whether the underlying Strickland claim is substantial. An affirmative answer means full federal review of the defaulted claim unburdened by AEDPA’s deferential standard of review.
This is a serious intrusion on federalism interests. I return to where I started: The “state courts are the principal forum for asserting constitutional challenges to state convictions.” Richter, 562 U.S. at 103, 131 S.Ct. 770. That will no longer be true in Indiana for at least some Strickland claims. After today’s decision, the federal courts, not the state courts, will be the primary forum for more constitutional challenges to state convictions. That result would be unavoidable if Martinez and Trevino inescapably applied. But they do not inescapably apply. I respectfully dissent.