In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1014

DENTRELL BROWN,

*Petitioner-Appellant,*

*v.*

RICHARD BROWN,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-1981-JMS-DKL — **Jane Magnus-Stinson**, *Chief Judge.*

ARGUED SEPTEMBER 28, 2016 — DECIDED FEBRUARY 1, 2017

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Petitioner Dentrell Brown and
his co-defendant Joshua Love were convicted of murder in a
joint trial in an Indiana court. After exhausting state court
remedies, Brown filed a federal habeas corpus petition under
28 U.S.C. § 2254. He claims he was denied effective assistance
of counsel when his lawyer failed to insist that the judge give
the limiting instruction required when evidence of a co-de-
fendant's out-of-court confession is introduced in a joint trial.

See *Bruton v. United States*, 391 U.S. 123 (1968) (protecting co-defendant from testimonial confessions of other co-defendants). The district court denied the habeas petition, finding that Brown had procedurally defaulted this claim for ineffective assistance of trial counsel by failing to assert it in state court so that federal review is barred. Brown has appealed.

On the issue of procedural default, we hold that the form of "cause" found in *Martinez v. Ryan*, 566 U.S. —, 132 S. Ct. 1309 (2012), and expanded in *Trevino v. Thaler*, 569 U.S. —, 133 S. Ct. 1911 (2013), is available to federal habeas corpus petitioners in Indiana who have substantial claims for ineffective assistance of trial counsel that have been procedurally defaulted in state post-conviction proceedings by lack of any counsel or lack of effective counsel. Brown is entitled to an opportunity to overcome procedural default of his claim for ineffective assistance of *trial* counsel for failure to request a limiting instruction if he can both demonstrate ineffective assistance of *post-conviction* counsel and assert a substantial claim of ineffective assistance of trial counsel. We conclude that he is entitled to an evidentiary hearing.

I.   *Factual and Procedural Background*

On appeal we review *de novo* district court rulings on petitions for habeas relief and review any findings of fact for clear error. See *Lisle v. Pierce*, 832 F.3d 778, 781 (7th Cir. 2016); *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). Those claims not adjudicated on the merits in the state court, like the one presented here, are also reviewed *de novo*. *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Warren v. Baenen*, 712 F.3d 1090, 1096, 1098 (7th Cir. 2013).

A.  *The Murder Trial of Joshua Love and Dentrell Brown*

In the early morning hours of March 8, 2008, in Elkhart, Indiana, Gerald Wenger was murdered after trying to buy drugs. He was discovered lying dead in the street around 2:00 a.m., with a single nine-millimeter bullet wound to his head. Two bullet casings were found near Wenger's body, one from a nine-millimeter handgun and a second from a .45 caliber handgun. No physical evidence was recovered beyond the shell casings.

Following the murder, investigators relied on information from interviews with community members. After interviews provided the names of Joshua Love and Dentrell Brown, investigators began to rely on information from incarcerated individuals. On June 18, 2008, the State charged Brown with murder.

Brown was then just thirteen years old, and Love was nineteen years old. Brown was waived into adult felony court, and the two were tried together. At trial, the State's key evidence tying Brown to the crime scene was the testimony of Mario Morris. Morris testified that, while Morris, Brown, and Love were all in the Elkhart County Jail, Brown and Love each confessed separately to involvement in the murder. Testifying first to his conversation with Love, Morris said that Love confessed to trying to sell fake drugs to Wenger the night of the murder, and then, after the sale went bad, shooting Wenger in the head with a nine-millimeter handgun.

Morris then testified that Brown had told him a similar story, but with some important differences. For example, Morris testified that Brown said he had struck Wenger with the butt of a .45 caliber handgun, discharging one unintentional

shot. A critical feature of Morris's testimony for *Bruton* pur-
poses was that his account of Love's confession included no
mention of Brown or anyone else having been present at the
shooting, and his account of Brown's confession included no
mention of Love or anyone else having been present when
Brown hit Wenger in the head.

After Morris testified, Brown and Love both moved for a
mistrial based on *Bruton v. United States*, 391 U.S. 123 (1968).
The trial judge denied both motions, emphasizing that at no
time did Morris say Brown's name when testifying against
Love, nor did he say Love's name when testifying against
Brown. Both Love and Brown were convicted of murder, with
Brown's conviction based on a theory of accomplice liability.
Brown was sentenced to 60 years in prison.

B.  *Direct & Collateral Review in the State Courts*

On direct appeal, Brown's counsel raised three claims, in-
cluding that the trial court abused its discretion when it de-
nied his *Bruton* motion for a mistrial. *D.B. v. State (D.B. I)*, 916
N.E.2d 750, 2009 WL 3806084, at *1, 2–3 (Ind. App. 2009)
(mem.). Brown's appellate counsel argued that Morris's testi-
mony about Love's statement violated Brown's confrontation
rights because Brown could neither compel Love to testify nor
cross-examine him. *Id*. at *2. The appellate court was not per-
suaded. It found no *Bruton* violation because Morris's account
of Love's confession to him never mentioned a third party pre-
sent at the scene of the murder. *Id*. at *3.

Brown filed a petition for post-conviction relief in state
court with the assistance of counsel. His post-conviction law-
yer raised a single issue in the operative petition: ineffective
assistance of trial counsel for having failed to move to sever

Brown's trial from Love's. The argument relied on *Bruton* even though the appellate court on direct review had "specifically held" that there was no *Bruton* violation in Brown's trial. The trial court denied relief, and the Indiana Court of Appeals affirmed, finding that the ineffective assistance of counsel claim was an attempt to revisit the *Bruton* issue decided against Brown on direct appeal and thus barred by *res judicata*. *D.B. v. State (D.B. II)*, 976 N.E.2d 146, 2012 WL 4713965 at *2–3 (Ind. App. 2012) (mem.).

C.  *Brown's Federal Habeas Petition*

Brown's habeas petition to the federal district court raised three issues, two of which have been dropped on appeal. The only claim before us is Brown's claim that his "trial lawyer was ineffective for failing to request an instruction limiting the use of Love's statement, offered through Morris, to Love." Because it was not presented to the state courts, the claim for ineffective assistance of trial counsel would ordinarily be barred from federal review because of procedural default. In the district court, however, Brown argued that he should be given the opportunity to overcome that default under *Martinez*, 132 S. Ct. 1309, and *Trevino*, 133 S. Ct. 1911.

The district court held that *Martinez* and *Trevino* do not apply to § 2254 cases in Indiana, and thus Brown was not entitled to attempt to overcome procedural default on his claim for ineffective assistance of trial counsel. *Brown v. Brown*, No. 1:13-cv-1981-JMS-DKL, 2015 WL 1011371, at *2–3 (S.D. Ind. 2015). His request for an evidentiary hearing was denied and his petition dismissed. We granted Brown an expanded certificate of appealability that included this claim because Brown had "made a substantial showing of the denial of his right to effective assistance of trial counsel."

II. *Analysis*

Brown's claim for ineffective assistance of trial counsel requires a two-step analysis. We hold first that the *Martinez-Trevino* doctrine can apply to claims for ineffective assistance of counsel arising from the Indiana state courts. We next hold that Brown has offered some evidence of deficient performance by his post-conviction relief counsel and has asserted a substantial claim of ineffective assistance of trial counsel. We reverse and remand the case to the district court for an evidentiary hearing on both claims for ineffective assistance, first on the procedural default issue and then, if the default is excused, on the merits of the trial-based claim.

Before explaining our view on *Martinez-Trevino*, we pause to address the state's assertion that petitioner's argument on appeal has been forfeited. The state argues that in the federal district court, petitioner's claims were based on the Confrontation Clause pursuant to *Bruton* rather than the Indiana Rules of Evidence. Under this theory, Brown's claim of ineffective assistance of trial counsel for failure to request a limiting instruction based on the Indiana Rules of Evidence would be forfeited now on appeal. We disagree. Brown's habeas petition claimed clearly that his "trial lawyer was ineffective for failing to request an instruction limiting the use of Love's statement, offered through Morris, to Love." The habeas petition discussed the failure to request the limiting instruction as something that should have occurred following the denial of the motion for a mistrial, and the federal district court evaluated Brown's claim separately from the Confrontation Clause issue. Thus, petitioner's specific claim—although not presented in the state courts—was not forfeited by any supposed failure to raise it in the federal district court.

### A. *The Martinez-Trevino Doctrine Applies in Indiana*

On appeal, petitioner argues that the rule established in *Martinez* and *Trevino* applies to § 2254 cases in Indiana so that he may try to overcome the procedural default of his claim for ineffective assistance of trial counsel. See *Martinez*, 132 S. Ct. 1309; *Trevino*, 133 S. Ct. 1911. We agree. We first explain the scope of the *Martinez-Trevino* doctrine. Against that backdrop, we then review the Indiana procedures for raising ineffective assistance of trial counsel, and we compare those procedures to those in other jurisdictions where the *Martinez-Trevino* doctrine applies. We find that Indiana procedures governing ineffective assistance of trial counsel claims fall into the category the Supreme Court addressed in *Trevino*.

### 1.  *The Martinez-Trevino Doctrine*

A federal habeas petitioner's claim is subject to the defense of procedural default if he does not fairly present his claim through a complete round of state-court review. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). A prisoner can overcome procedural default by showing cause for the default and resulting prejudice, or by showing he is actually innocent of the offense. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Until recently, a federal petitioner could not overcome the federal bar on procedurally defaulted claims by proving ineffective assistance of post-conviction counsel because there is no constitutional right to post-conviction counsel. See *id*. at 752–53.

In 2012, however, the Supreme Court recognized a new form of cause for overcoming procedural default in *Martinez*: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas

court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1315, 1320. The Court explained that this route was needed to protect a prisoner with "a potentially legitimate claim of ineffective assistance of trial counsel" when state law required defendant to bring claim for ineffective assistance of trial counsel on collateral review. *Id*. If post-conviction counsel errs by failing to raise a claim for ineffective assistance of trial counsel in the initial round of collateral review, it is unlikely that any state court at any level will hear the claim. *Id*. at 1316.

The next year, the Court expanded the *Martinez* form of "cause" in *Trevino*, holding that "a distinction between (1) a State that denies permission to raise the claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference." *Trevino*, 133 S. Ct. at 1921. Examining Texas law, *Trevino* observed that even though Texas did not *require* a defendant to raise an ineffective assistance of trial counsel claim in state collateral review proceedings, the "structure and design of the Texas system in actual operation" worked effectively as a ban on claims on direct review. *Id*. at 1915. Like Texas, Indiana does not always require prisoners to bring claims for ineffective assistance of trial counsel on collateral review, so petitioner Brown must depend on the *Trevino* extension of *Martinez* to overcome procedural default.

In dissent in *Trevino*, Chief Justice Roberts predicted accurately a long process of state-by-state litigation on applying

*Trevino*. *Id*. at 1923 (Roberts, C.J., dissenting). At least eight circuits, including this one, have decided whether *Trevino* applies to specific jurisdictions. This court applied the *Martinez-Trevino* doctrine to federal prisoners who bring motions for post-conviction relief under § 2255.[1] *Ramirez v. United States*, 799 F.3d 845, 853 (7th Cir. 2015) ("[T]he federal courts have no established procedure … to develop ineffective assistance claims for direct appeal," so "the situation of a federal petitioner is the same as the one the Court described in *Trevino*."); see also *Coleman v. Goodwin*, 833 F.3d 537, 543 (5th Cir. 2016) (*Martinez-Trevino* applies in Louisiana); *Runningeagle v. Ryan*, 825 F.3d 970, 981–82 (9th Cir. 2016) (*Martinez-Trevino* applies in Arizona); *Woolbright v. Crews*, 791 F.3d 628, 636 (6th Cir. 2015) (*Martinez-Trevino* applies in Kentucky); *Fowler v. Joyner*, 753 F.3d 446, 463 (4th Cir. 2014) (North Carolina procedures do "not fall neatly within *Martinez* or *Trevino*" and doctrine applies only in certain circumstances); *Sutton v. Carpenter*, 745 F.3d 787, 795–96 (6th Cir. 2014) (*Martinez-Trevino* applies in Tennessee); *Sasser v. Hobbs*, 735 F.3d 833, 852–53 (8th Cir. 2013) (*Martinez-Trevino* applies to capital defendants in Arkansas).

---

[1] On two occasions, we have also observed that the *Martinez-Trevino* exception does not apply to the procedures that govern the typical ineffective assistance of trial counsel claim in Wisconsin courts. See *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015) ("Wisconsin law treats post-conviction relief in an unusual way, insofar as it allows defendants to raise a claim of ineffectiveness of counsel simultaneously with a direct appeal."); *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014) ("Wisconsin law expressly allows—indeed, in most cases requires—defendants to raise claims of ineffective assistance of trial counsel as part of a consolidated and counseled *direct* appeal, and provides an opportunity to develop an expanded record."). Our analysis here does not alter that analysis of Wisconsin law.

Cf. *Lee v. Corsini*, 777 F.3d 46, 61 (1st Cir. 2015) (*Martinez-Trevino* does not apply in Massachusetts); *Fairchild v. Trammell*, 784 F.3d 702, 721 (10th Cir. 2015) (*Martinez-Trevino* does not apply in Oklahoma).

   2.  *Claims for Ineffective Assistance of Trial Counsel in Indiana*

With *Trevino* as our guide, two characteristics of Indiana practice—the "procedural design" and "systemic operation"—convince us that the *Martinez-Trevino* doctrine applies in Indiana. *Trevino*, 133 S. Ct. at 1921. First, while Indiana law does not always require claims for ineffective assistance of trial counsel to be brought on collateral review, the Indiana Supreme Court has adopted rules and doctrines that strongly discourage any other path. Second, in actual practice, the Indiana Supreme Court's discouragement has worked to force almost all such claims to wait for collateral review.

   a.  *Procedural Design*

The Indiana Supreme Court acted to clear up the law governing claims for ineffective assistance of trial counsel in *Woods v. State*, 701 N.E.2d 1208 (Ind. 1998). After considering alternative approaches to procedural default, the court concluded "that the most satisfactory resolution of a variety of competing considerations is that ineffective assistance may be raised on direct appeal, but if it is not, it is available in post-conviction proceedings irrespective of the nature of the issues claimed." *Id*. at 1216. A claim for ineffective assistance of counsel is barred on collateral review if it was already raised on direct appeal. *Id*. at 1220. Critical for our purposes, presenting a claim for ineffective assistance is an all-or-nothing proposition in Indiana. A defendant may not present one specific

ground on direct appeal and wait to present another on collateral review. *Id*.

The court in *Woods* explained that a claim for ineffective assistance of trial counsel will ordinarily require evidence beyond the record of the conviction and so should ordinarily be brought in a collateral post-conviction case where the defendant can offer new evidence. *Id*. at 1216. The complicating factor here—which shifts Indiana from *Martinez* to *Trevino*—is that *Woods* also recognized there may be an "exceptional case in which the defendant prefers to adjudicate a claim of ineffective assistance before direct appeal remedies have been exhausted." *Id*. at 1219–20. Under these rare circumstances, *Woods* explained, a procedure known in Indiana as the *Davis-Hatton* procedure allows a convicted appellant to suspend or terminate his direct appeal to pursue a petition for post-conviction relief. *Id*. at 1219, citing *Davis v. State*, 368 N.E.2d 1149 (Ind. 1977); *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993); see also Ind. R. App. P. 37; *Peaver v. State*, 937 N.E.2d 896, 899 (Ind. App. 2010). The *Davis-Hatton* procedure might be appropriate if the trial record itself supports an indisputable claim of ineffective assistance of trial counsel that will result in the immediate release of a person who is in prison improperly.

If a trial court denies a *Davis-Hatton* petition, an appeal from that post-conviction denial and the original direct appeal will be consolidated but evaluated under separate standards of review. *Peaver*, 937 N.E.2d at 899–900; *Slusher v. State*, 823 N.E.2d 1219, 1222 (Ind. App. 2005); *Dodd v. Knight*, 533 F. Supp. 2d 844, 852 (N.D. Ind. 2008). A defendant who uses the *Davis-Hatton* procedure will be barred from asserting any new claim for ineffective assistance on direct appeal, or in any of the consolidated proceedings or additional post-conviction

proceedings that may follow. *Peaver*, 937 N.E.2d at 899. Most helpful for the issue we face here, the Indiana Supreme Court explained that the *Davis-Hatton* procedure is "not to be used as a routine matter in adjudicating the issue of trial counsel's effectiveness." *Woods*, 701 N.E.2d at 1220.

Like Texas in *Trevino* and Tennessee in *Sutton*, Indiana "*permits* defendants to raise the claims on direct appeal." Compare *Sutton*, 745 F.3d at 791, quoting *Trevino*, 133 S. Ct. at 1918, with *Woods*, 701 N.E.2d at 1216, 1220. Because most claims for ineffective assistance of trial counsel cannot be shown within the four corners of the original trial court record, and because of the presumption of competence that applies in Indiana courts, claims for ineffective assistance of trial counsel brought on direct appeal "almost always fail." *Woods*, 701 N.E.2d at 1216, quoting *United States v. Taglia*, 922 F.2d 413, 417–18 (7th Cir. 1991). *Trevino* made much the same point about the need to present evidence outside the original trial record. 133 S. Ct. at 1918.

Additional aspects of Indiana procedure align with other aspects of *Trevino*. As in our federal cases, a defendant who asserts a claim for ineffective assistance of trial counsel on direct appeal may not relitigate the claim on collateral review. Compare *Ramirez*, 799 F.3d at 853, with *Woods*, 701 N.E.2d at 1220. Like the federal rules we reviewed in *Ramirez*, Indiana's rule is even more restrictive than the Texas procedures in *Trevino*. See *Ramirez*, 799 F.3d at 853. Also, Indiana does not allow counsel on direct appeal from a conviction to use a motion to correct errors to supplement the record to assert a claim for ineffective assistance. Compare *Woods*, 701 N.E.2d at 1216, with *Trevino*, 133 S. Ct. at 1918 (determining that a motion for

new trial is an inadequate vehicle for ineffective assistance of trial counsel claims).

Moreover, because a *Davis-Hatton* petition in Indiana is a collateral attack on a conviction, it does not provide, in the *Trevino* Court's words, "meaningful review" of an ineffective assistance counsel claim on direct review: it simply is not direct review. See *Trevino*, 133 S. Ct. at 1919. Perhaps most important, the *Davis-Hatton* procedure is neither "systematic" nor "typical." It is, in the words of *Trevino*, "special, limited, … [and] rarely used." Compare *Woods*, 701 N.E.2d at 1220, with *Trevino*, 133 S. Ct. at 1919–21. Amicus Indiana Public Defender Council tells us that between 2008 and 2012, its attorneys filed approximately 2000 appeals and only four *Davis-Hatton* petitions.

### b. *Systemic Operation*

Indiana rules work together to make it unlikely that an Indiana defendant will be able to raise adequately on direct appeal a claim for ineffective assistance of trial counsel. The Indiana Supreme Court said as much in *Woods*: "As a practical matter," the confluence of these rules "will likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal." 701 N.E.2d at 1220. As in *Trevino* itself, "special, rarely used procedural possibilities" like the *Davis-Hatton* procedure cannot overcome the Indiana courts' directives that the preferred forum for ineffective assistance of trial counsel claims is post-conviction review. See *Trevino*, 133 S. Ct. at 1920.

The Indiana courts, like the Texas courts in *Trevino*, routinely direct defendants to bring claims for ineffective assistance of trial counsel on collateral review and warn against

bringing them on direct review. Compare *Woods*, 701 N.E.2d at 1219–20 ("[A] postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim."), with *Trevino*, 133 S. Ct. at 1919–20. The Indiana Supreme Court not only has reinforced the preference for collateral review but has gone so far as to decline addressing a defendant's claim for ineffectiveness of trial counsel actually presented on direct appeal, believing it "preferable for the defendant to adjudicate his claim … in a post-conviction relief proceeding." *McIntire v. State*, 717 N.E.2d 96, 102 (Ind. 1999); see also *Landis v. State*, 749 N.E.2d 1130, 1132 (Ind. 2001).

The Indiana Court of Appeals has followed suit, routinely issuing non-precedential decisions that echo the lesson of *Woods*, especially when denying relief on direct appeal. E.g., *Crockett v. State*, 13 N.E.3d 556, 2014 WL 2202763, at *4 (Ind. App. 2014) ("[I]t is well-settled that a post-conviction proceeding is generally the preferred forum," even if "a criminal defendant … is at liberty to elect whether to present this claim on direct appeal or in post-conviction proceedings"); see also *Johnson v. State*, 46 N.E.3d 499, 2016 WL 327985, at *2 (Ind. App. 2016); *Merriman v. State*, 40 N.E.3d 1280, 2015 WL 5703912, at *5 n.3 (Ind. App. 2015); *Beals v. State*, 37 N.E.3d 977, 2015 WL 4105047, at *10 (Ind. App. 2015); *Anderson v. State*, 16 N.E.3d 488, 2014 WL 3511699, at *5 (Ind. App. 2014); *Wine v. State*, 9 N.E.3d 771, 2014 WL 1266285, at *3 (Ind. App. 2014); *Reed v. State*, 985 N.E.2d 1151, 2013 WL 1701879, at *3 (Ind. App. 2013).

Like the Texas bar in *Trevino*, the Indiana criminal defense bar "has taken this strong judicial advice seriously." See *Trevino*, 133 S. Ct. at 1920. In its annual training, amicus Indiana

Public Defender Council "consistently advises against appellate counsel presenting ineffective assistance claims on direct appeal." When a public defender handling a direct appeal asked the Council if she should raise a claim for ineffective assistance of trial counsel in the direct appeal, the responses were best summarized by one that began, "NOOOOOO!!!" Amicus Br. of Ind. Pub. Def. at 21a.

For these reasons, in the language of *Trevino*, "as a matter of its structure, design, and operation," the Indiana procedural system "does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. The *Martinez-Trevino* form of cause to excuse procedural default is available to Indiana defendants who seek federal habeas relief.[2]

B. *Cause Under Martinez*

In a state like Indiana where the *Martinez-Trevino* doctrine can apply, procedural default in the state courts will not bar federal habeas review when a petitioner can demonstrate cause for the default. See *Trevino*, 133 S. Ct. at 1918; *Martinez*, 132 S. Ct. at 1318; *Coleman*, 501 U.S. at 747–48. To demonstrate cause under *Martinez-Trevino*, the petitioner must show deficient performance by counsel on collateral review as required under the first prong of the *Strickland* analysis. *Martinez*, 132 S. Ct. at 1318; see *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Actual resulting prejudice can be established with a substantial claim of ineffective assistance of trial counsel that

---

[2] On this issue, we respectfully disagree with both the district court here and the Northern District of Indiana in *Brown v. Superintendent*, 996 F. Supp. 2d 704, 716–17 (N.D. Ind. 2014).

would otherwise have been deemed defaulted. See *Detrich v. Ryan*, 740 F.3d 1237, 1245–46 (9th Cir. 2013) (observing that this reading is required to square the requirement with the structure of *Martinez*). Accordingly, to avoid procedural default, petitioner Brown must demonstrate that his collateral review counsel was deficient and must make a substantial claim of ineffective assistance of trial counsel. See *Trevino*, 133 S. Ct. at 1918, citing *Martinez*, 132 S. Ct. at 1318–19, 1320–21. Petitioner Brown has made a strong enough showing of each element to call for an evidentiary hearing in the district court.

1.  *Ineffective Assistance of Post-Conviction Relief Counsel*

Brown claims that his lawyer in his post-conviction case was deficient because she did not raise a claim that his trial counsel was ineffective for failing to request a limiting instruction. To demonstrate that counsel's performance was deficient, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Judicial review of counsel's performance is "highly deferential," with "every effort … made to eliminate the distorting effects of hindsight." *Id.* at 689.

The State has not directly addressed whether Brown's collateral review lawyer was ineffective. On this record, and without having heard yet from the post-conviction attorney, we find that petitioner Brown has offered evidence that his post-conviction counsel's representation fell below an objective standard of reasonableness so that he is entitled to an evidentiary hearing on the issue.

The amended complaint on collateral review made a single allegation of error: trial counsel had been ineffective "for failing to move for a severance of his trial from Petitioner's

codefendant" as a remedy for a *Bruton* violation. The problem with this claim, as the post-conviction courts held, was that on his direct appeal Brown had already argued the joint trial produced a *Bruton* violation. The state courts rejected that claim, squarely and definitively. Even if we account for the benefits of hindsight, a new claim built on the assumption of a *Bruton* violation would seem to have had little or no chance of success.

We recognize that the vast majority of claims for post-conviction relief are without merit, so an attorney's failure to prevail, or even pursuit of an unpromising claim, does not show ineffective assistance. Also, the Supreme Court's fundamental point in *Strickland* about avoiding the distorting effects of hindsight applies as much in the post-conviction process as in any other. See *Strickland*, 466 U.S. at 689. A post-conviction attorney can and should use professional judgment in selecting which claims and issues to raise, just as we expect from attorneys in direct appeals. See *Morris v. Bartow*, 832 F.3d 705, 709–11 (7th Cir. 2016) (finding counsel's performance competent despite mixed record indicating possible coerced plea); *Vinyard v. United States*, 804 F.3d 1218, 1225–27 (7th Cir. 2015) (*Strickland* not applied unreasonably; counsel advised client not to challenge guilty plea); *Makiel v. Butler*, 782 F.3d 882, 898–902 (7th Cir. 2015) (*Strickland* not applied unreasonably; counsel selected issues for appeal and did not include an additional obvious claim).

For purposes of applying *Martinez* and *Trevino*, the approach we take to claims of ineffective assistance of counsel on direct appeal provides the best available guide. Pursuit of unsuccessful arguments and claims does not show ineffective assistance of counsel. But we may compare the claims actually

presented to those that might have been presented. Where counsel chose to pursue just one issue that was a virtually certain loser, as in *Shaw v. Wilson*, a petitioner may show deficient performance by showing that a much stronger claim or argument was available. 721 F.3d 908, 915 (7th Cir. 2013); see also *Vinyard*, 804 F.3d at 1228; *Makiel*, 782 F.3d at 898–99.

Even without relying on the benefits of hindsight, petitioner Brown makes a strong argument here that the one claim counsel pursued in the post-conviction petition was doomed from the beginning. The claim that counsel was ineffective by failing to move to sever Brown's trial from Love's appears to have been built on the assumption that the joint trial resulted in a *Bruton* violation. The state courts had already rejected that premise on direct appeal.

Petitioner argues that a viable ineffective assistance of trial counsel claim could have been premised on failure to seek a limiting instruction as to the hearsay Morris offered when testifying to his conversation with Love. See Ind. R. Evid. 801(c) (defining hearsay), 802 (making hearsay inadmissible), and 105 (providing a limiting instruction when evidence is presented that is "admissible against a party or for a purpose—but not against another party or for another purpose"). In contrast, the claim post-conviction review counsel presented instead was barred by *res judicata*. We do not mean to imply that we have reached a conclusion on the ultimate question of counsel's performance. As noted, no court has heard testimony from Brown's post-conviction counsel about the selection of issues and other factors that may affect the performance issue under *Strickland*. By showing that another, much stronger claim was available, however, petitioner has shown he is entitled to an evidentiary hearing on that issue.

### 2. *Substantial Underlying Claim for Ineffective Assistance of Trial Counsel*

*Martinez* also requires a petitioner to show "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318–19. *Martinez* offered little guidance as to what is a "substantial" claim for these purposes. It provided only a "cf." citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), describing the standards for certificates of appealability. 132 S. Ct. at 1319. *Miller-El* held that a certificate of appealability should be granted when a substantial showing can be made "by demonstrating that jurists of reason could disagree with the district court's resolution … or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "This threshold inquiry does not require full consideration." *Id*. at 336.

The *Martinez* dissent predicted the problem we face here: "to establish cause a prisoner must demonstrate that the ineffective-assistance-of-trial-counsel claim is 'substantial,' which apparently means the claim has at least some merit. … The Court does not explain where this substantiality standard comes from." *Martinez*, 132 S. Ct. at 1322 n.2 (Scalia, J., dissenting). Appellate opinions applying *Martinez* and *Trevino* thus far offer limited further guidance. See *Ramirez*, 799 F.3d at 854–56 (concluding that there was "some merit" to Ramirez's argument without delving further into the standard). See also *Runningeagle*, 825 F.3d at 983 (deciding case on other grounds); *Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012) (same); *Flores v. Stephens*, 794 F.3d 494, 505 (5th Cir. 2015)

(concluding "that reasonable jurists would not debate the district court's decision … because the claims are not 'substantial' within the meaning of *Martinez*"); *Cox v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014) (applying standard for certificate of appealability); *Detrich*, 740 F.3d at 1245 (citing *Miller-El* standard); *Cook v. Ryan*, 688 F.3d 598, 610 n.13 (9th Cir. 2012) (observing that *Martinez* used *Miller-El* as "generally analogous support").

In this case, petitioner argues that by granting a certificate of appealability, we have already determined that his defaulted ineffective assistance of trial counsel claim is substantial under *Martinez*. The State simply repeats that a "substantial claim is one that has 'some merit,'" then argues that petitioner cannot satisfy cause and prejudice under *Strickland*. We conduct a separate and deeper review of the record, beyond our grant of a certificate of appealability, and find a substantial ineffective assistance of trial counsel claim under *Martinez*.

We are guided by *Strickland*'s two-prong approach to claims of ineffective assistance of counsel. Brown must address whether his trial counsel's performance was deficient, falling below an objective standard of reasonableness. He must also address whether the ineffective assistance caused actual prejudice. *Strickland*, 466 U.S. at 687–88, 691–92. Substantiality is a threshold inquiry; full consideration of the merits is not required. *Miller-El*, 537 U.S. at 336.

a. *Substantial Showing of Trial Counsel's Deficient Performance*

At trial, the State relied heavily on the testimony of Mario Morris to place both Love and Brown at the scene of the murder. Morris testified to separate conversations he had in the Elkhart County Jail, one with Love and others with Brown. Without his testimony, only circumstantial evidence and one other reluctant witness implicated Brown.

Morris first testified to a conversation he had in Elkhart County Jail with Love. Like many of the witnesses called by the State, Morris suffered from credibility issues. He claimed that over a card game in jail, Love admitted he was involved in the murder of Wenger. According to Morris, Love told him that he had left a woman's apartment at the Middlebury Apartments to sell a "gang pack" (something that appears to be crack cocaine but is not) to a "white guy, Mr. Wenger." Love then told Morris he got in the back seat of a truck with Wenger in the driver's seat, and drove around a few blocks. Once Wenger figured out the drugs were fake, an argument ensued. Both men got out of the truck. Love then shot Wenger with a nine-millimeter handgun. Afterwards, he got back into the truck and pulled off to park behind some houses. Love came back later to wipe down any fingerprints he might have left on the truck.

Immediately after describing Love's tale for the jury, Morris testified that he had a separate conversation with Brown, also in the jail, who Morris said told a story very similar to Love's. Morris testified that Brown told him that he left a woman's apartment at the Middlebury Apartments on the night of the murder. He was going to try to sell some fake

drugs. Morris was asked by the prosecutor, "And did *they* actually try to sell him those gang packs?" (emphasis added). Morris responded, "Yes, sir."

Then, Morris testified, Brown told him that he had gotten out of the truck and hit Wenger on the head with his .45 caliber handgun. The blow caused the gun to fire. Brown then got in the truck and drove to an alley behind some houses. During deliberations, the jury requested to review Morris's testimony. It was read back to them in the courtroom.

Morris's testimony as to his conversation with Love, although admissible against Love, was inadmissible hearsay as offered against Brown. As petitioner's brief emphasizes, "like perhaps all jurisdictions, Indiana courts assume that jurors follow their instructions." If Brown's trial attorney had requested the limiting instruction to which Brown was probably entitled, it would have left the prosecution to rely on the arguably weak remainder of its case against Brown.

We are not convinced, on the limited record before us, that the decision not to seek a limiting instruction was objectively reasonable. Without the testimony of Morris's conversation with Love, which mirrored so closely the testimony of Morris's conversation with Brown, none of the evidence presented by the prosecution puts Brown at the murder scene with Love.

b. *Substantial Showing of Prejudice*

The additional evidence against Brown was not so strong that his claim of actual prejudice is not substantial for purposes of *Martinez* and *Trevino*. The State relies primarily on the testimony of Kendrick Lipkins, who at trial was treated as a witness hostile to the prosecution. He responded only reluc-

tantly with a single word, "Correct," to a leading question regarding an overheard confession by Brown. Lipkins also testified that he had a separate conversation in a car with Love, in Brown's presence, about the disposal of a .45 caliber handgun. But Lipkins, like most of the State's witnesses, had serious credibility issues. He admitted to being interested in a reward offered for information on the case, and he was willing to cooperate with police in order to keep his brother, T.J. Lipkins, out of jail.

The remaining evidence against Brown was circumstantial and not conclusive. A witness testified that a few weeks before the shooting she saw Brown with what she thought was a gun. Another witness testified that she saw both Love and Brown around 10:30 p.m. the night of the shooting. That was over three hours before Wenger was found, and she had a difficult time identifying Brown. A man testified that he saw two boys walking by Wenger's truck the morning after the shooting, but he could neither identify Brown nor say what the two boys were doing. Two witnesses testified that Brown was trying to sell a nine-millimeter handgun in the weeks following the shooting. One of those witnesses testified that when Brown was asked whether he murdered someone with the gun, he laughed. Although at least sixteen fingerprints were pulled from the truck, they were all Wenger's. No guns were recovered, but one .45 casing and one nine-millimeter casing were found at the crime scene. Bullet fragments found in Wenger's body were from a single nine-millimeter bullet. The evidence was legally sufficient to permit a jury to convict Brown, but Brown has made a substantial claim of deficient trial counsel and resulting prejudice. His claim for ineffective assistance of trial counsel is not "wholly without factual support," or lacking in all legal merit. *Martinez*, 132 S. Ct. at 1319.

If Brown's theory is proven at an evidentiary hearing, he will have made a successful ineffective assistance of trial counsel claim. On the record before us, reasonable jurists "could disagree … or … conclude the issues presented" in petitioner's brief and borne out in the trial transcript "are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Brown has presented a substantial claim of ineffective assistance of trial counsel, sufficient to avoid the procedural default because he has demonstrated that the claim has some merit. See *Martinez*, 132 S. Ct. at 1318–19.

*        *        *

In sum, the *Martinez-Trevino* doctrine applies to Indiana procedures governing ineffective assistance of trial counsel claims. Petitioner Brown has presented evidence of ineffective post-conviction counsel and made a substantial claim of ineffective assistance of trial counsel. Accordingly, we REVERSE the district court's dismissal of Brown's petition and REMAND to the district court for an evidentiary hearing on the issue of ineffective assistance of post-conviction counsel. If the district court finds deficient performance by post-conviction counsel, Brown's default will be excused, and he will be entitled to an evidentiary hearing on the merits in the district court for the underlying claim of ineffective assistance of trial counsel for failure to request a limiting instruction.

Sʏᴋᴇs, *Circuit Judge*, dissenting. "Federalism and comity principles pervade federal habeas jurisprudence." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015). "One of these principles is that 'in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). The doctrine of procedural default enforces this principle: A federal court will not hear a state prisoner's habeas claim unless the prisoner has first presented it to the state courts for one full round of review. *Id.* (citing *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)).

Requiring state prisoners to exhaust state remedies serves important federalism interests. The "state courts are the principal forum for asserting constitutional challenges to state convictions," *Harrington v. Richter*, 562 U.S. 86, 103 (2011), and federal habeas review "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights," *Calderon v. Thompson*, 523 U.S. 538, 555–56 (1998) (internal quotation marks omitted). Federal habeas review of state convictions disturbs the State's "significant interest in repose for concluded litigation … and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Richter*, 562 U.S. at 103 (quotation marks omitted). Accordingly, "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

The deferential standard of review adopted in the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254(d), protects these state interests. So does the exhaustion requirement. For this reason, a federal court may review a defaulted claim only in very limited circumstances. The court may excuse a procedural default only if the prisoner (1) demonstrates cause for the default and consequent prejudice or (2) makes a convincing showing of actual innocence, thus establishing that the failure to review the defaulted claim would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749–50; *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016).

"Cause" is an objective factor *external* to the defense that impedes the presentation of the claim to the state courts. *Coleman*, 501 U.S. at 753; *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). Attorney error ordinarily doesn't satisfy the externality requirement because the defendant's attorney is his agent and the attorney's actions are imputed to his principal. *Coleman*, 501 U.S. at 753. But attorney error *can* excuse a procedural default if the error "is an independent constitutional violation," i.e., a denial of the Sixth Amendment right to the effective assistance of counsel. *Id.* at 755. In that situation, the risk of error falls on the State as a corollary to its constitutional duty to provide effective counsel. *Id.* at 754. It follows, then, that because there is no Sixth Amendment right to counsel on collateral review, attorney negligence at that stage is *not* cause to excuse a procedural default. *Id.* at 755.

As my colleagues explain, in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court recognized a narrow exception to the *Coleman* rule. Luis Martinez, an Arizona prisoner, alleged in his federal habeas petition that his trial counsel was constitutionally ineffective in violation of the rule

articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). He had counsel for his initial collateral-review proceeding, but his attorney did not present this claim to the state courts. *Martinez*, 132 S. Ct. at 1314. Under Arizona law a claim of ineffective assistance of trial counsel cannot be raised on direct appeal; it *must* be presented in an initial collateral-review proceeding. *Id.* The Court held that this procedural requirement of Arizona law warranted an equitable exception to the *Coleman* rule that an error by postconviction counsel is not cause to excuse a procedural default. *Id.* at 1315.

The Court held that if state law *requires* a prisoner to bring a *Strickland* claim on collateral review, a default at that stage of the criminal process does not preclude federal habeas review if "there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320. To be eligible for federal review, however, the defaulted *Strickland* claim must be "a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318. The Court remanded Martinez's case, directing the lower courts to determine whether his state postconviction counsel was constitutionally ineffective, and if so, whether the underlying claim for ineffective assistance of trial counsel was "substantial." *Id.* at 1321.

The Court expanded the *Martinez* exception in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), making it available to prisoners in states that, though not *expressly* restricting *Strickland* claims to collateral review, nonetheless have procedural rules that foreclose the opportunity to develop the factual record necessary to effectively litigate the claim on direct review. Carlos Trevino was a Texas prisoner sentenced to

death for murder. He alleged in his federal habeas petition that his trial counsel was ineffective for failing to adequately investigate and present mitigating circumstances in the penalty phase of his trial. *Id.* at 1915. The state trial judge had appointed new counsel for Trevino's direct appeal, but the attorney did not raise this claim. The judge appointed still another attorney for collateral review; that attorney too failed to raise the claim.

*Martinez* could not help Trevino. Unlike Arizona, Texas does not expressly *require* prisoners to reserve *Strickland* claims for collateral review. *Id.* at 1918. But the state's procedural rules make it "all but impossible" to raise such a claim on direct appeal. *Id.* at 1920. That's because a claim of ineffective assistance of trial counsel almost always requires development of a factual record, but the time constraints imposed by Texas law (most notably, the time for preparation of the transcript) eliminate the opportunity to make the necessary record in conjunction with a direct appeal. *Id.* at 1918. That is, under the procedural rules in place in Texas, it's "'virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim' on direct appeal." *Id.* (quoting *Robinson v. State*, 16 S.W.3d 808, 810–11 (Tex. Crim. App. 2000)). For this reason the Texas Court of Criminal Appeals—the state's highest criminal tribunal— "has explicitly stated that '[a]s a general rule' the defendant 'should *not* raise an issue of ineffective assistance of counsel on direct appeal,' but rather in collateral review proceedings." *Id.* at 1920 (quoting *Mata v. State*, 226 S.W.3d 425, 430, n.14 (Tex. Crim. App. 2007)).

These two features of Texas law—a procedural system that makes it virtually impossible to effectively litigate a

*Strickland* claim on direct review and an affirmative judicial directive *not* to do so—put Trevino in much the same position as Martinez. The Court concluded that the "procedural design and systemic operation" of the criminal appeal process in Texas was the functional equivalent of Arizona's rule barring *Strickland* claims on direct review. *Id.* at 1921 ("[A] distinction between (1) a State that denies permission to raise the claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference."). So the Court extended the *Martinez* exception to prisoners in Texas and other states where the "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal." *Id.*

My colleagues conclude that Indiana is enough like Texas to warrant extending *Martinez-Trevino* to defaulted *Strickland* claims in habeas petitions brought by Indiana prisoners. I disagree. Indiana does not by procedural rule make it virtually impossible to litigate a *Strickland* claim on direct appeal. To the contrary, Indiana *explicitly provides* a process for doing so: the so-called *Davis/Hatton* procedure, which "allows a defendant to suspend the direct appeal to pursue an immediate petition for postconviction relief" in order to develop the factual record necessary to support a *Strickland* claim at the direct-appeal stage. *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind. 1998). The Indiana Supreme Court specifically reaffirmed the vitality of the *Davis/Hatton* procedure in *Woods*. *Id.* at 1219–20.

Nor has Indiana's highest tribunal gone as far as the Texas Court of Criminal Appeals, which specifically directed defendants *not* to raise these claims on direct review. In *Woods*—the seminal case on this subject—the Indiana Supreme Court explained that although collateral review is "normally the preferred forum" for a claim of ineffectiveness assistance of trial counsel, direct review remains an appropriate and workable option in light of the *Davis/Hatton* procedure. *Id.* at 1219.

Here, in full, is the key passage in the state high court's opinion:

> For the reasons outlined, a postconviction hearing is normally the preferred forum to adjudicate an ineffectiveness claim. We nonetheless agree that potential for administrative inconvenience does not always outweigh the costs of putting off until tomorrow what can be done today: "If there is no reason for delay in presenting a claim, the delay should not be countenanced, for there is a considerable social interest in the finality of criminal proceedings." [*U.S. v.*] *Taglia*, 922 F.2d [413,] 418 [7th Cir. 1991]. If we are dealing with an improperly incarcerated defendant, the cause of justice is plainly better served by making that determination as soon as possible. The same is true even if a retrial is required. Resolving record-based ineffectiveness claims on direct review also has some doctrinal appeal because it is more consistent with the residual purpose of postconviction proceedings. *Langley* [*v. State*],

267 N.E.2d [538,] 541 [Ind. 1971] ("[T]he per-
missible scope of review on direct appeal is
well defined and broader than that permitted
by collateral attack through post conviction re-
lief."). These considerations can be largely met
under a procedure that allows a defendant to
suspend the direct appeal to pursue an imme-
diate petition for postconviction relief. *Davis v.
State*, 368 N.E.2d 1149 (1977); *see also Hatton v.
State*, 626 N.E.2d 442 (Ind. 1993) (reiterating vi-
tality of *Davis* procedure). This should cover
the exceptional case in which the defendant
prefers to adjudicate a claim of ineffective as-
sistance before direct appeal remedies have
been exhausted. Because of the *Davis* proce-
dure, the direct appeal is not necessarily an ob-
stacle to speedy adjudication of the adequacy
of the representation, as recent cases in which
the procedure was invoked for that purpose
demonstrate. *See Coleman v. State*, 694 N.E.2d
269 (Ind. 1998); *Brown v. State*, 691 N.E.2d 438
(Ind. 1998). Although not to be used as a rou-
tine matter in adjudicating the issue of trial
counsel's effectiveness, a *Davis* request may be
appropriate "where the claim asserted argua-
bly requires a certain level of fact finding not
suitable for an appellate court." *Lee v. State*,
694 N.E.2d 719, 721 n.6 (Ind. 1998), *petition for
cert. filed,* 67 U.S.L.W. 3362 (U.S. Sept. 24, 1998)
(No. 98–6205).

*Id.* at 1219–20 (footnote omitted).

The state supreme court went on to fashion a rule against claim splitting, holding that all allegations of trial counsel's ineffectiveness must be consolidated in a single proceeding. More specifically, the court said that "[t]he specific contentions supporting the claim … may not be divided between the two proceedings." *Id.* at 1220. It's a strong rule of preclusion; if the defendant raises the issue on direct review, he may not do so again in collateral proceedings. *Id.* The court acknowledged the likelihood that this "all or nothing" requirement would channel many *Strickland* claims to collateral review: "As a practical matter, this rule will likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal. It will certainly deter some." *Id.* Still, the court held—unequivocally—that "concerns for prompt resolution of claims lead us to permit ineffective assistance to be raised [on direct appeal] within or without the procedure available pursuant to *Davis*." *Id.*

So Indiana offers defendants a true choice—direct appeal *or* collateral review—and *either* forum is a procedurally viable option for adjudicating a *Strickland* claim. Indeed, *Woods* was explicit on this point. "The defendant must decide the forum for adjudication of the issue—direct appeal or collateral review." *Id.* In sharp contrast to Texas, *both* options are fully open in Indiana, and the state provides a meaningful opportunity to litigate the issue at *either* stage. This takes Indiana outside the rule and rationale of *Trevino*.

My colleagues focus on the state high court's strong preference for reserving *Strickland* claims for collateral review, a preference apparently reinforced by the lower courts and generally followed by the criminal defense bar. Majority Op. at pp. 13–15. That's not enough to bring Indiana within the

ambit of *Trevino*. The Supreme Court justified extending *Martinez* to Texas prisoners primarily because that state's procedural rules make it *virtually impossible* to effectively raise a *Strickland* claim on direct appeal. *Trevino*, 133 S. Ct. at 1918–19. These procedural barriers, in turn, have led Texas courts to admonish defendants *not* to bring these claims on direct review. It's true that the Court spent several paragraphs discussing this "strong judicial advice." *Id.* at 1920. But the advice of the Texas judiciary played only a supporting role in the Court's decision; it certainly wasn't sufficient on its own to support the expansion of *Martinez*.

Moreover, unlike the Texas Court of Criminal Appeals, the Indiana Supreme Court has *not* directed defendants to refrain from bringing claims of trial counsel's ineffectiveness on direct review; it has said, rather, that collateral review is "normally the preferred forum" for these claims. *Woods*, 701 N.E.2d at 1219. Indeed, as the passage quoted above makes clear, one of the main points of the court's decision in *Woods* was to preserve the direct-review option and highlight the availability of the *Davis/Hatton* procedure for defendants who are concerned about delay but need to make a factual record before bringing a *Strickland* claim on direct review.

In short, my colleagues' decision is not so much an application of *Trevino* as an unwarranted *expansion* of it. This has real consequences for criminal litigation in Indiana, for federal habeas review of Indiana convictions, and ultimately for the relationship between the federal and state courts. It is by now canonical that federal habeas review of state convictions is extremely deferential. Under AEDPA the state court's factual findings are presumed to be correct, § 2254(e)(1), and

a federal court may not grant habeas relief unless the state court's adjudication of a federal claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, § 2254(d). As the petitioner's counsel acknowledged in oral argument, *Martinez-Trevino* creates a moral hazard in the state postconviction process, even where by its terms the doctrine clearly applies. If a prisoner complies with the exhaustion requirement and presents his *Strickland* claim to the state courts, AEDPA's highly deferential standard of review applies. If instead he defaults the claim and the *Martinez-Trevino* exception applies, the *Strickland* claim gets plenary review in federal court. Given these perverse incentives, we should be wary of expanding the doctrine beyond the limits of its rationale.

As a result of today's decision, the Indiana district courts will be deluged with defaulted *Strickland* claims. It is an unfortunate reality in postconviction litigation that ordinary claims of trial error can be easily repackaged as claims of ineffective assistance of trial counsel. Now that Indiana prisoners may use *Martinez-Trevino*, Indiana district judges will routinely have to contend with the two gateway questions that unlock the door to plenary review of defaulted *Strickland* claims. A federal judge will have to decide—de novo—whether the prisoner's postconviction counsel was ineffective, and if so, whether the underlying *Strickland* claim is substantial. An affirmative answer means full federal review of the defaulted claim unburdened by AEDPA's deferential standard of review.

This is a serious intrusion on federalism interests. I return to where I started: The "state courts are the principal forum

for asserting constitutional challenges to state convictions."
*Richter*, 562 U.S. at 103. That will no longer be true in Indiana
for at least some *Strickland* claims. After today's decision, the
federal courts, not the state courts, will be the primary forum
for more constitutional challenges to state convictions. That
result would be unavoidable if *Martinez* and *Trevino* inescap-
ably applied. But they do not inescapably apply. I respectful-
ly dissent.